Bowen, J.
 

 The pleadings in this action were put in when the Code of 1849 was in force, the one hundred and sixty-eighth section of which provided that every material allegation of new matter in an answer, not specifically controverted by a reply, should, for the purposes, of the action, be taken as true. As the plaintiff did not reply to the answer, if the cause had been tried while the then existing Code was in force, the defendant would have been entitled to judgment on the pleadings, if the “ new matter ” contained in the answer constituted a defence. But the cause was not tried until 1853, and in 1852 the one hundred and sixty-eighth, with numerous other sections of the Code, was amended. The act making the amendments commences as follows: “ The following sections and subdivisions of sections of the Code of Procedure are hereby amended so as to read as followsand the last clause of section one hundred and sixty-eight, as amended, provides that “the allegation of new matter in the answer, not relating to a counter claim, or of new matter in a reply, is to be deemed controverted, as upon a denial or avoidance, as the case may requireand there is no provision of the act exempting from its operation suits then pending, what
 
 *175
 
 ever might be their stage or condition. I think that the judge who tried the cause was right in holding that the issues were to be tried under the Code of 1852. Prior to the trial, that part of this section of the Code of 1849 which required a reply to “new matter” in an answer, in order to form an issue thereon, was repealed, and the provisions of the amended section substituted in the place thereof.
 

 Whether the privilege, as it is called, which excuses and even prohibits an attorney from testifying to confidential communications made to him by his client, extends to his clerk, has never, that I am aware of, been decided in this state. In
 
 Jackson
 
 v.
 
 French
 
 (3
 
 Wend.,
 
 337), Chief Justice Savage remarks that the privilege was “ confined to counsel, to an interpreter, and perhaps to the clerks of an attorney or counsel, though as to the latter the cases differ.” In England, it is now held that it extends to the clerk
 
 (Taylor
 
 v.
 
 Forster,
 
 2
 
 Carr. & Payne,
 
 195;
 
 Bowman
 
 v.
 
 Norton,
 
 5
 
 id.,
 
 177;
 
 King
 
 v.
 
 Inhab. of Upper Boddington,
 
 8
 
 Dow. Ry.,
 
 726), and I think this is the correct rule. It is customary for attorneys to intrust their clerks, more or less, with the conduct of suits prior to the trial thereof, and communication with the clients is frequently necessary. In the attorney’s absence he is represented by his clerk. In
 
 Power
 
 v.
 
 Kent
 
 (1
 
 Cow.,
 
 211), it was held that an agreement made by a clerk, in the absence of his principal, waiving an irregularity, was binding upon the latter. In this case the communication proposed to be proved was made by the plaintiff to the clerk, to enable the latter to draw a complaint, in an action then pending, in favor of the former, and prosecuted by the clerk’s principal as attorney. The communication was equally confidential as if made to the attorney, and there is the same reason for holding that it was privileged.
 

 The plaintiff, to entitle himself to recover possession of the premises in question, was bound to show title in himself
 
 *176
 
 He proved that Moses W. Dusenbury died intestate, seized of the premises, leaving a widow and six children his heirs-at-law; and to show that he had acquired the title of these heirs, he introduced in evidence a deed from Stephen Dusenbury (one of the heirs), as administrator of the deceased, and proceedings had before the surrogate of Monroe county for the purpose of authorizing the conveyance by the administrator. Various objections are taken to these proceedings, each of which, it is claimed, render them ineffectual to authorize the conveyance.
 

 To prove that James Dusenbury was administrator, &c., the plaintiff produced the order of the surrogate appointing him, and the letters of administration issued to him in due form. It was not shown that on granting of the letters there was any proof before the surrogate of the death of Moses W. Dusenbury, or that the widow had renounced her right to administer, or that any citation was previously issued. The order, however, recited that the appointment was made “on filing the petition of Stephen Dusenbury, praying to be appointed, with the proof taken, and it appearing satisfactorily to the surrogate that said Stephen was entitled to such letters, and on filing his oath and bond with sufficient sureties.” On the trial of this action it was proved that the deceased died intestate, in Monroe county, and was an inhabitant of that county when he died. The surrogate, therefore, had jurisdiction to grant letters of administration upon his personal estate. I think the letters issued to Stephen Dusenbury were
 
 prima facie
 
 evidence of his due appointment; that it is to be presumed either that the widow renounced, or that the proper citation was issued and served, and that the requisite evidence was before the surrogate to authorize his action, the contrary not appearing. The fifty-sixth section of the title of the Revised Statutes, entitled “ Of granting letters testamentary or of administration” (2
 
 R. S.,
 
 80), provides that “the letters testamentary and of administration, and letters appointing
 
 *177
 
 a collector, granted by an officer having jurisdiction, shall , be conclusive evidence of the authority of the person to whom the same may be granted, until the same shall be reversed on appeal, or revoked, as in this chapter provided.”
 
 (Dale
 
 v. Roosevelt, 8
 
 Cow.,
 
 333, 348;
 
 Jackson
 
 v.
 
 Robinson,
 
 4
 
 Wend.,
 
 436, 442;
 
 Stark. Ev.,
 
 516,
 
 part
 
 4;
 
 id.,
 
 551.)
 

 The administrator, as such, had no control over the real estate left by the intestate. His authority to sell, if it existed, was conferred by the orders of the surrogate and the other proceedings before him. The latter derived his powers from the statute; and in order to confer the authority upon the administrator to transfer the title to the land, and thus disinherit the heirs of the intestate, it was requisite that the directions of the statute, so far as they relate to acquiring jurisdiction of the subject matter, and of the parties to be affected by the proceeding, should be strictly complied with. These principles are elementary, and no citation of authority to sustain them is necessary. The act of March 23, 1850, for the protection of purchasers at sales made by orders of surrogates, has no application to this case, as this action7 was pending when the act was passed, and is, therefore, excepted from its operation.
 
 (Laws of
 
 1850,
 
 ch.
 
 82, 118, $3.)
 

 In order that the proceedings before the surrogate should have any validity whatever, it was absolutely essential that he should, in the manner prescribed in the statute, acquire jurisdiction of the subject matter, and also of the widow and heirs of the intestate, and of those in occupation of the land proposed to be sold. To acquire jurisdiction of the subject matter, a petition, duly verified and setting forth certain facts, must be presented to the surrogate. The first section of the title of the Revised Statutes regulating these proceedings (2
 
 R. S.,
 
 100), authorizes the executors or administrators, after having filed an inventory, and upon discovery of a deficiency in the personal estate oi the testator or intestate to pay his debts, to “
 
 apply
 
 to the
 
 *178
 
 surrogate for authority to mortgage,
 
 lease
 
 or
 
 sell
 
 so much of the real estate of the testator or intestate as shall be neces-o sary to pay such debts.” The second section provides what the petition shall set forth, but does not direct what its prayer shall be. The application, as directed by the first section, is, however, to be for authority to lease, mortgage or sell. The fifteenth section directs the surrogate, in the first place, to inquire and ascertain whether sufficient money for the payment of the debts can be raised by mortgaging or leasing the land, and, if it appears that can be done advantageously to the interest of the estate, he is required to direct that such' mortgage or lease be made. The eighteenth section provides that if it shall appear to the surrogate that the moneys required cannot be raised by mortgage or lease, advantageously to the estate, he shall, from time to time, order a sale of so much of the real estate as shall be necessary to pay the debts, &c. The prayer of the petitioner in this case is for authority to sell. Authority to mortgage or lease is not asked, and it is claimed that for this reason the petition did not give the surrogate jurisdiction to entertain the proceedings. Perhaps it would not have been competent for the surrogate, under this petition, to have ordered the premises to be mortgaged or leased, and, if so, it would have been his duty to dismiss the proceedings in case on investigation it had appeared that the interests of all concerned required that the land should be mortgaged or leased rather than sold. In the order authorizing the sale, it is recited that the surrogate had inquired whether the money could be raised by mortgaging or leasing; and that it appeared that it could not. This is conclusive evidence that the surrogate adjudicated on that question, and, if the question was properly before him on the petition, his adjudication is conclusive. I think it competent for the administrator to petition for the sale of the real estate of his intestate, and for the surrogate to act on the petition and authorize the sale, providing on investí
 
 *179
 
 gation it appears that a sale will be more beneficial than a lease or mortgage.
 

 The petition in other respects substantially complied with the statute, and I think it was sufficient to give the surrogate jurisdiction to entertain the proceedings. It stated that no personal property had come to the hands of the administrator, and there was, therefore, none to be applied. It set forth one debt outstanding against the intestate, describing it minutely; described the real estate of which the intestate died seized, stating its value and the names of the occupants thereof, and the names, ages and places of residence of the heirs.
 

 To acquire jurisdiction of the persons of the widow and heirs of the intestate and of the occupants of the land, it was requisite to publish an order to show cause four weeks in a newspaper published in the county of the surrogate, and serve a copy of the order on the widow and heirs, who were residents of the county, fourteen days prior to the day appointed by the order for showing cause; and as two of "the heirs were residents of the State of Ohio, it was necessary to publish the order six weeks in the state paper or serve a copy thereof on them forty days prior to the time appointed therein for showing cause.
 

 The petition is dated January
 
 22,
 
 1849, and was on that day verified before the surrogate, and the order to show cause was made the same day. The plaintiff introduced in evidence affidavits showing the service of a copy of the order on all the heirs residing in the county, and on the defendant, who was one of the persons in possession of the land described in the petition; and also affidavits showing the publication of the order in the county and in the state paper. The affidavit showing the publication in the state paper stated that the publication was once in each week for six weeks, commencing on the 20th of January, 1849. The affidavit of service upon three of the heirs and upon the defendant stated that the service was made on or
 
 *180
 
 about the 1st day of February, 1849, the time for showing cause being March 12th, 1849. No affidavit or other evidence was produced showing any service either upon the widow or upon one of the persons in possession of the premises, as alleged in the petition, or upon the two heirs residing in Ohio. The proof of publication in the state paper was palpably defective. The order could not be published until it was made by the surrogate.- • What was published on the twentieth of January was not the order, as it did not then, exist. The most that the affidavit' proved or tended to prove was a publication of the order for five weeks, when the statute required six weeks.
 

 In
 
 Sheldon,
 
 v.
 
 Wright
 
 (1
 
 Seld.,
 
 497), which was an action of ejectment, and in which defendant claimed title under a sale made pursuant to-a surrogate’s order, it was held that if there was evidence before the surrogate tending to show the publication required to give him jurisdiction, and he adjudged the evidence to be sufficient, his adjudication on the subject was conclusive. The proceedings in that case were under the Revised Laws of 1813, which required the order to show cause to be published, immediately after it was made, in two newspapers, four weeks successively. The order was made September 6th, 1826, appointing October nineteenth' as the day to show cause, and was published in two papers the four weeks successively, commencing in one paper on the twentieth and in the other on the twenty-sixth of September, as shown by the affidavits of publication; and the order authorizing the sale recited the order to show cause, and stated that it “was
 
 immediately
 
 after published, for four weeks successively,” in two papers, &c., thus showing that the surrogate found from the evidence before him that the statute had been literally complied with.
 

 The order directing the sale, in the case under consideration, has the following recitation on the subject of acquiring jurisdiction of the parties: “And on reading and filing
 
 *181
 
 satisfactory proof, by affidavit, of the
 
 dm
 
 publication of said order, and of the
 
 dm
 
 service thereof on every person in the occupation of the premises of which a sale is desired, and on the widow and hems of the said deceased, and the said administrator having this day appeared in person, and the surrogate, upon due examination, being satisfied that the administrator has fully complied with the requisitions of the statute,” &c. The affidavit of publication in the state paper shows what the surrogate considered “satisfactory proof of the due publication of the order.” He adjudged that a publication for five weeks was a compliance with the statute, or at least was sufficient to give him jurisdiction to authorize the sale. He might, with the same propriety, have determined that a publication for one week, or that a publication, for six weeks prior to the making of the order, of a copy of the order he intended making, was sufficient to give him jurisdiction. As the plaintiff on the trial introduced this affidavit as the evidence before the surrogate of the publication, it is not to be presumed or inferred that the surrogate had other evidence thereof, or that the publication was different from the statement in the affidavit. In fact, there was no evidence, upon the trial of this action, that the surrogate had acquired jurisdiction of the parties, except that furnished by the affidavits of the publication and service of the order. Had the order directing the sale recited the publication and service, stating the time and manner in which they were done, as was the case in
 
 Sheldon
 
 v.
 
 Wright,
 
 perhaps such recital would have been evidence of the facts stated; but a recital of the reading and filing of satisfactory proof, by affidavit, of the due publication and due service »f the order was no evidence that the publication and service were at the time and in the manner prescribed by the statute. Such recital was nothing more than a statement by the surrogate that he had acquired jurisdiction of the parties, and that the evidence of it was contained in affidavits filed with him, and it proved nothing without the affidavits.
 
 *182
 
 His adjudging that he had jurisdiction, without stating that he found from evidence that the facts existed which conferred it, was not sufficient. He could not acquire jurisdiction by deciding that he had it. It was incumbent on the plaintiff to show affirmatively that the surrogate had jurisdiction of the parties.
 
 (Bloom
 
 v.
 
 Burdick,
 
 1
 
 Hill,
 
 130;
 
 Schneider
 
 v.
 
 McFarland,
 
 2
 
 Comst.,
 
 459;
 
 Mills
 
 v.
 
 Martin,
 
 19
 
 John.,
 
 7-33.) In this he wholly failed, so far as relates to the widow of the intestate, the two of his heirs who resided in Ohio and one of the persons in possession of the premises. I think, also, that the affidavit of the service on the defendant and three of the heirs
 
 “on or about”
 
 February 1st, 1849, was insufficient; for, although it tended to show a service more than fourteen days prior to the day appointed for showing cause, yet it did not prove affirmatively that such was the fact, and there is no evidence that the surrogate so found or adjudged.
 

 But in order to give any validity to the proceedings, it was necessary that jurisdiction should be acquired of all the parties. The statute authorized the surrogate to order the sale upon no other condition. The eighth section provides that, at the time and place appointed by the order to show cause, &c.,
 
 “ and upon due proof of the service and publication above required,”
 
 he shall proceed to hear and examine, &c. If, therefore, the affidavit last referred to, with the surrogate’s adjudication thereon, was sufficient to show jurisdiction of the three heirs and of the defendant, it will not aid the plaintiff, as he entirely failed to show either publication for the six weeks in the state paper, or any service upon the widow.
 

 I do not think that any of the other exceptions to the sufficiency of the proceedings, to authorize the conveyance of the land, are well taken. , None of them go to the question of jurisdiction; and the rule is that, after jurisdiction is acquired, errors in the subsequent proceedings before the surrogate must be corrected by an appeal, and cannot be
 
 *183
 
 taken advantage of in a collateral action.
 
 (Atkins
 
 v.
 
 Kinnan,
 
 20
 
 Wend.,
 
 241;
 
 Jackson
 
 v.
 
 Crawfords, 12 id.,
 
 533;
 
 Jacksons. Robinson,
 
 4
 
 id.,
 
 436.) Of this character was the neglect of the surrogate to enter in a book the debts against the estate, adjudged by him to be valid, as required by section thirteen of the statute; the taking of a bond with a penalty less than double the value of the land ordered to be sold, and the omission to post notice of the sale in the city of Rochester. It is contended that the statute, impliedly at least, makes void a sale where the requisite notices are not given, except in favor of a purchaser in good faith, without notice of the omission ; and the defendant offered to prove, on the trial, that the plaintiff, when he purchased, had knowledge of the fact that no notice was posted in Rochester. The fiftieth section imposes a penalty, of double the value of the land sold, upon any administrator who shall fraudulently sell any real estate of his testator contrary to the prior provisions of the act; and the next section provides that no offence in relation to giving of notice of the sale, &c., shall affect the validity of any sale to a purchaser in good faith, without notice of the irregularity. There was no offer to prove that the omission to post the notice was fraudulent, and no inference can be drawn from these provisions that the legislature intended that the omission to post a notice, as required, should avoid a sale in the absence of fraud.
 

 The defendant offered to prove that the debt, for the payment of which the application to sell the land was made, was fictitious and fraudulent, and that the plaintiff, when he purchased, knew it was fictitious and fraudulent, and also knew that it had not been proved before the surrogate, which proof was rejected. That an omission to prove the debt did not invalidate the proceedings, we have already seen. The surrogate adjudicated upon that question, and his judgment, until reversed, is binding upon the heirs and the defendant. They had the right to appear and contest
 
 *184
 
 the validity of the sale before the surrogate, and. to appeal from his decision thereon, had they deemed it erroneous. (2
 
 R. S.,
 
 609, § 104.) Had the offer been to prove that the administrator knew that the debt was fictitious, and that he instituted or prosecuted the proceedings with the fraudulent intent of subjecting the real estate left by the intestate to its payment, and that the plaintiff was privy to and purchased the land to consummate the fraud, a question would have been presented which it is not now necessary to pass upon. The facts proposed to be proved are perfectly consistent with an honest belief on the part of the administrator that the debt was valid, and with goo faith in commencing and prosecuting the proceedings; an honesty and good faith are to be presumed. Under sum circumstances, a knowledge on the part of the purchase * of the land that the debt was fictitious, and fraudulently preferred by the alleged creditor, should not affect the title to the land, especially when the surrogate had adjudged the debt valid after notice to all persons interested to appear and contest its validity; but I think the judgment should be reversed and a new trial granted, on the ground that the plaintiff failed to show that the surrogate acquired jurisdiction of all the parties interested in the land in question.
 

 Seldes", J., took no part in the decision." All the other judges concurred in reversing the judgment, on the ground of the failure to show the surrogate’s jurisdiction of the parties interested in the land, without passing on the, other questions discussed.
 

 Judgment reversed and new trial ordered.