NEW YORK COUNTY—HON. D. C. CALVIN, SURROGATE.—APRIL, 1876.*

## BAILEY *v.* STEWART.

*In the matter of proving the instrument propounded as the last Will and Testament of* ALEXANDER TURNEY STEWART, *deceased.*

If a petition for probate, verified by the person most likely to know,— e. g. the testator's widow,—alleges that he left no heirs, next of kin or relatives, whatever, the issue of citations is unnecessary.

On an application to vacate probate, on a petition alleging undue influence, &c. if the proponents of the will move to dismiss the petition before opportunity to take proofs is given, their motion must be determined upon the assumption that all the allegations of the petition are true.

*DELANO C. CALVIN, Esq. was appointed by the Common Council, April 12th, 1876, to fill the vacancy caused by the death of Stephen D. Van Schaick, who had been elected at the previous November general election. Mr. Calvin was elected to the office of Surrogate at the general election, November, 1876.

The Surrogate has power to open, vacate, or modify, his probate of a will, whether of real, or personal estate, or both.

The probate is not merely dependent on, and effected by, the proofs taken: but the Surrogate's decision on the sufficiency of the proofs, which the statute requires him to enter in his minutes, is a determination of the court upon the proofs submitted.

By parity of reasoning, if probate were refused by mistake or misapprehension, the decree refusing it should be opened, and the application reheard.

The Surrogate of the city and county of New York, has, by the act of 1870, the same power to open, vacate and modify his orders and decrees, as is exercised by a court of general jurisdiction.*

This power is equal to that exercised by a court of equity on a bill filed for relief against a judgment or decree, for fraud or mistake.

An application to the Surrogate of the city and county of New York to open his decree, is not matter of legal right, but is addressed to his discretion, to be exercised with a just regard to the interests of the respective parties.

By the term "discretion" here, it is not meant that his decision of the application would not be reviewable, but such a discretion is intended, as would justify the granting or denial of the application, according to the circumstances and equity of the case.

Judicial discretion never means the arbitrary will of the judge ; it is always legal discretion, to be exercised in discerning the course prescribed by law ; when that is discovered, it is the duty of courts to follow it ; it is to be exercised not to give effect to the will of the judge, but to that of the law.

It is a judicial balancing of the rights and remedies of the respective parties, which constitutes the right exercise of judicial discretion.

The probate of a will of real property, is only *prima facie* evidence of the validity of the will, which may be impeached by the heirs in an action.

Hence probate of such a will, if void, would be no obstacle to the remedy of the heir in an action.

Where a petition shows a case conferring jurisdiction upon a Surrogate, he has authority to act in the premises ; and a subsequent discovery of persons interested, who were entitled to, but did not have, notice, because their existence was denied by the petition does not render his decree void.    At most it would only render it inoperative as to their interest.†

---

*As to the power of the court to relieve parties from the controlling effect of probate, see *Booth v. Kitchen,* (7 *Hun,* 260.)

†See *Roderigas* v. *East River Savings Bank* (63 *N. Y.* 460 *rev'g* 48 *How· Pr.* 166.) *Mariot* v. *Mariot* (1 *Strange,* 671). *Dickinson* v. *Hayes,* (31 *Conn.,* 417.) *Charles* v. *Hubor,* (78 *Pa. St.* 489.)

BAILEY v. STEWART.

The provision of the act of 1870 restricting the remedy for impeaching a decree of the Surrogate of the city and county of New York, to a proceeding by appeal, does not apply against one who was not a party to the proceeding in which the decree was made.

On an application to open a decree to allow one who was not a party to the proceeding to adduce proofs, the court should not pass upon the probability or unprobability of the case alleged in the applicant's petition.

Testator left a widow, and a very large real and personal estate, and an active business. A petition by the widow for probate was presented alleging that he left no heirs, next of kin, or relatives whatever; and the will was admitted to probate immediately without the issue of any citation. Subsequently a petition was presented by one claiming to be an heir, asking that the probate be opened, and proofs taken, and alleging that the will was invalid for undue influence. On the hearing, the petitioner consented that the probate stand as to personal property, and pressed the application only as to the will as a will of real property. *Held*, that as the heir might impeach the will as to real property by action, notwithstanding probate, and as the title to a very large amount of real estate would be discredited, and the execution of the testator's intentions hindered, by opening the probate, the application should be denied.

THIS proceeding was instituted upon an order to show cause why the pretended probate of the instrument propounded as the last will and testament of Alexander Turney Stewart, deceased, as a will of real and personal estate, and the apparent decision thereon, should not be adjudged void, revoked, vacated, and set aside.

The order to show cause was based upon the petition of James Bailey, in his own right, and on behalf of the other collateral relatives of said Stewart named in the petition.

The petition alleged that the petitioner and others named therein, were collateral relatives of the full blood, and heirs at law, and next of kin of the late Alexander Turney Stewart, who died April 10th, 1876; that the paper bearing date March 27th, 1873, purporting to be the last will and testament of said Stewart, appointing Henry Hilton, and William Libby, executors, and

Cornelia M. Stewart, executrix thereof, and the codicils thereto, one dated March 27th, 1873, and the other March 28th of the same year, were in the evening of April 13th, 1876, presented to the Surrogate for probate.

That on the 14th of the same month letters testamentary were issued, and said will and codicils were recorded in the Surrogate's office as duly proved.

That no citation or notice to appear was issued, or directed to be served upon the petitioner, any of the heirs at law, or next of kin, as required by law, nor issued to, or served upon, the Attorney General of the State; that no opportunity was afforded to the petitioner, or any of the said heirs, &c., to require all the witnesses to the will, &c., to be summoned, or to request other witnesses to be examined, or to be present at, or contest the proof of said will.

That the probate and record thereof, were not made publicly, at the Surrogate's court room, or office, but privately, in unusual haste, on the day of the funeral of said Stewart, without notice to petitioner, or said heirs.

That said papers were not the last will and testament, and codicils of said Stewart, that they were obtained, and the execution thereof by said Stewart was procured, by circumvention, and undue influence practised upon him by Henry Hilton, or some other person unknown to the petitioner.

That the petitioner and others of said heirs, contested the probate of said will.

That Cornelia M. Stewart, and Henry Hilton, were the only legatees, or devisees, named in the will, and the only legatees, or devisees, named in the first codicil were George B. Butler and others named, and that the only legatees and devisees named in the second codicil were Charles B. Clinch and others named therein.

The petition prayed that the probate of the will and

codicils, and the decision thereon, might be declared void, revoked, vacated, and set aside, and for such other relief, etc., as might seem proper.

On the return day of the order to show cause, the counsel for the executors and executrix, and for Mrs. Stewart, and Mr. Hilton, individually, appeared and moved that the proceedings so far as they sought to revoke, vacate, or set aside the will in question, as a will of personal estate, be dismissed—to which the counsel for the petitioner consented, stating that they made no claim, so far as the personal estate was concerned; and the proceedings to that extent were dismissed.

The widow, Cornelia M. Stewart, filed her answer to the petition, which set forth substantially, her marriage to the testator, 16th October, 1823, and that she lived with him as his wife, in the city of New York, until his decease, April 10th, 1876.

That she had no knowledge, or information, sufficient to form a belief, whether the petitioner, or the persons named, were collateral relatives of her said husband, and therefore denied the same—that the will and codicils were duly proved April 13th, 1876, and admitted to probate, as a will of real and personal estate and letters testamentary were issued to the persons named therein as executors, who qualified, and that the will and codicils were duly recorded, as duly proved.

That the application for such probate, and the proofs thereof, were publicly, and openly made.

That the testator at the time of his death was extensively engaged in mercantile affairs, and the improvement of large amounts of real estate, employing a large number of persons, and that to save the business from interruption, and the estate from loss, it was essential that no cessation in the management of its affairs should take place;—and as the Surrogate could not attend on

the following day, proofs were made on the evening of the funeral for her convenience; that she had been informed by the testator that he had no relatives, or next of kin living, and she had no intimation, or suspicion, that he left him surviving collateral relatives, heirs at law, or next of kin. That her allegation in her petition for the probate, in that respect, she believes to be true—that said papers are the last will and testament and codicils of the testator, and the uninfluenced and intelligent acts of her deceased husband; and she denies on information and belief, that they or either of them, were obtained by undue influence, practised by said Hilton, or any other person. That she had never heard her deceased husband speak of the petitioner, or of the other persons named in the said petition, as his relatives—that he had never recognized them as such.

The executor and executrix also filed an answer setting forth substantially the same facts as are contained in the answer of Mrs. Stewart.

Henry Hilton also filed an affidavit setting forth that he knew the deceased intimately for over twenty years;—that he drew the will and codicils under the direction of the testator, who was in the full vigor of his intellect and memory,—that no other persons were present when such directions were given,—that he did not influence, or attempt to influence, the testator and does not know of any other person doing so.

That until after his death he never communicated the contents of said will and codicils to Mrs. Stewart or to any other person.

That for many years past he has been in the employ of said testator, assisting, and conducting his affairs, having general knowledge thereof, and of his plans.

That testator's business has for many years required the constant employment of many thousands of persons here, and in Europe.

That during deponent's acquaintance with him, the deceased has personally directed, managed, and controlled his business, and his employees to the fullest extent, and did so up to within a few days of his death.

That he had frequently heard him say that he did not know of the existence of any blood relatives, as had been generally stated in the newspapers in this country and in Europe.

That he had been a frequent guest at his table, and has never seen any person whom he recognized as a blood relative.

That he had general charge of his affairs, under the direction of the testator, particularly as to his individual property, and was acquainted with his various plans, &c

That under a power of attorney from the widow, the deponent had continued the carrying forward of such plans,—stating them with some detail.

That expenditures for that purpose had exceeded $350,000, and that other projects mentioned would incur an expense of $300,000 more, and may reach half a million.

That work was continued on the public institution, for the benefit of working women, (an institution projected, and commenced by the testator in his life-time) the completion of which would involve an additional expenditure of $350,000; that since testator's death, there had been paid and extinguished financial engagements to the amount of millions of dollars, besides the specific legacies named in the will, and upwards of $200,000 to employees, pursuant to testator's letter to his wife.

That the deponent had a last will and testament in his possession, duly made and executed by the testator in his life-time, dated May 1st, 1855, by which he gave and devised his entire residuary, real and per-

sonal estate, to his wife, after certain legacies, less than those contained in his last will, which former will deponent received from Mr. Stewart some months after the execution of his last will.

William Libby, the other executor, filed his affidavit stating his acquaintance with the deceased, for upwards of seventeen years; the deponent was general manager of the wholesale business, and in July, 1867, became a partner of the firm of A. T. Stewart & Company, and continued as such to testator's death; that their intercourse was constant, and that so far as it was possible for one man, the testator actually and personally controlled his business till within a few days of his death; this practice was constant after March, 1873, as before

That from deponent's knowledge, it was absurd to say that undue influence could control him, in making his will, or in doing any other act, in reference to his property.

That the deponent had never heard or known of any one, claiming to be a blood relative of his, or that he acknowledged any such, but it was generally understood, that he had none, and deponent so believed.

The proceedings on the probate together with the alleged will, and codicils as recorded, were made part of these proceedings.

Prior to the presentation of the answers, and affidavits above stated, the counsel for the executors, and executrix took preliminary objections, and moved to dismiss the petition on the ground that as a will of real and personal estate, the court had no authority to set aside the probate, under the act of 1870, because such probate was not dependent upon an order, or decree, and was only *prima facie* evidence, liable to be impeached by any person claiming rights in hostility to the will. That the petitioner had not made a *prima facie* case

calling for answer, as the statute provides that when the Surrogate shall be satisfied, that the proofs are such as are required by the statute, his certificate and the proof endorsed thereon, entitle the paper to be read in evidence, and that the act of 1870, does not give the Surrogate power to vacate, or set aside such certificate, that as the motion is made upon proceedings already had for probate, and the only ground urged against the validity of the will was undue influence by Mr. Hilton, or some person unknown, the burden of proof of such undue influence was with the petitioner, and that if the petitioner should succeed in opening or vacating the probate, his position in respect to the real estate would not thereby be improved, or affected.

The decision on this preliminary motion to dismiss was reserved, until the facts were presented, with leave on the part of the executor and executrix to renew the motion on the whole case.

After the answers and affidavits were filed in opposition to the petition, counsel for the petitioner offered to give evidence of the facts set forth in the petition by production of witnesses; but the motion to dismiss on all the papers was elaborately argued on both sides, and submitted for the purpose of the decision.

H. L. CLINTON, WM. A. BEACH, H. E. DAVIES, *and* H. H. ANDERSON, *for the Executors,* HENRY HILTON *an d Mrs.* STEWART.

W. O. BARTLETT, E. ROOT, *and* W. D. BOOTH, *for the petitioner*

THE SURROGATE.—The counsel for the executors and executrix in their argument of this motion have discussed with great earnestness the force and effect of the facts set forth in the respective answers and affidavits presented in their behalf, and urged the improbability of the alleged undue influence upon the testator by Mr. Hilton, and by others unknown; but it is clear to my

mind that this motion to dismiss, must be considered upon the assumption that the allegations contained in the petition are true, and no benefit can be derived to the parties making the motion, from the facts alleged by them ; for the motion is based upon the alleged absence of reasonable ground set forth in the petition for the opening and vacating of the probate, and if the answers are to be regarded, they must be accepted as forming issues of fact for the purpose of presenting proofs to establish those issues, and the petitioner would be entitled to the opportunity to prove the allegations set forth in the petition with leave on the part of the proponents of the will, to contradict them, and show their truth.

The petition after alleging that the petitioner and others are collateral relatives of the full blood, and heirs at law and the next of kin of the testator, states that the will and codicils were presented to the Surrogate, on the 13th day of April, 1876, and application made for their admission to probate and record, and that letters testamentary were issued on the next day, and the said will and codicils were recorded in said office as duly proved, without citation to the petitioner, or the other persons alleged to be heirs at law, or next of kin, as required by chap. 460, of the Laws of 1837, and without citation to the Attorney General of the State; and that thereby the claimant was deprived of the opportunity to require all the witnesses to said will to be produced and examined, or to require other witnesses to be examined, according to the Act of 1841, chapter 129.

It appears by petition of the widow duly verified by her on the 13th day of April, 1876, and on which the petitioner moves and which was presented to the Surrogate praying for probate of said will and codicils, that " the widow, only heirs, and next of kin of said

deceased was the petitioner"—that said deceased left him surviving neither father, mother, brother, or sister or descendants of any or either of them, or any descendants of his, or any relative or next of kin of said deceased.

On this proof, and on the faith of the allegations contained in said petition, the proceedings of probate were taken, and upon the assumption of their truth, it is entirely clear that there was no need of issuing citations to persons thus clearly proved not to exist.

The third subdivision of section 5, of chapter 460, of the Laws 1837, provides that if the will relate to both real and personal estate, the names, places of residence of the heirs, widow, and next of kin of the testator shall be ascertained by the Surrogate, by satisfactory evidence, and section 7 provides that the Surrogate shall thereupon issue a citation requiring the proper persons to appear and attend the probate of the will, and prescribes certain facts which shall be alleged in the citation.    Section 8 provides for the service of such citations Section 9 provides that, before proceeding to take the proof of any will, the Surrogate shall require satisfactory evidence, by affidavit, of the service of the citation, in the mode prescribed by law.

The *proper persons* referred to, in section 7, are evidently the heirs at law, and next of kin, if any exist.

In this case, the Surrogate *did ascertain by satisfactory evidence*, and by the oath of the person most likely to know, that there were neither heirs at law, or next of kin, and the provisions of the statute referred to were fully complied with, and complete jurisdiction obtained for the purpose of probate.

It is important, *first*, to determine the power of this court to open, vacate, or modify the probate in this case; for while the petitioner's counsel invoke that power as a

matter of right, it is objected by the counsel for the executors and executrix, that as to a will of real estate, there is no power, to vacate, or modify the decision or decree, admitting the will and codicils in question to probate :

*First,* because the probate is not dependent upon an order or decree of the Surrogate, but upon proofs on which he is required to make his certificate whereby it becomes only *prima facie* evidence. (2 *Rev. Stat.* 58, § 15.)

*Second,* because the statute providing for the filing of allegations against a will of personal property within a year after its probate, makes no provision for the review or opening, vacating or revoking a will or real estate; and to sustain this latter point, the case of the will of *Kellum* (50 *N. Y.*, 298)* is cited.

By section 21, of chapter 460, of the Laws of 1837, concerning proof of wills, &c., it is provided that the Surrogate shall enter in his minutes the *decision* which he may make concerning the sufficiency of the proof or validity of any will which may be offered him for probate, and I think it quite clear that the admission of the will in question to probate, was a *decision* or determination of this court upon the proofs submitted.

In *Campbell* v. *Logan*, (2 *Bradf.*, 90), after a very elaborate and learned discussion of the question, Surrogate BRADFORD held that the power to revoke, open or alter the decrees of the Surrogate Court, was essential to the administration of justice, and a necessary incident to the exclusive jurisdiction of the Surrogate over all matters of the probate of wills; and this power was claimed independent of the provisions of the statute prescribing the conclusive character of the probate of wills of personal property.

In *Pew* v. *Hastings* (1 *Barb. Ch.*, 452), the chancellor

---

* Reversing 6 *Lans.*, 1.

held that the Surrogate had the power to open a decree taken by default, and in consequence of mistake, or accident, and that the provisions of the *Revised Statutes* " that no Surrogate shall under pretext of incidental power, or constructive authority, exercise any jurisdiction whatever not expressly given" by same statute of this state, (2 *Revised Statutes*, 221, § 1) having been repealed by the Act of 1837, page 536, sec. 71, it had restored the incidental powers inherent in that court; and in *Proctor* v. *Wanmaker*, (1 *Barb. Ch.*, 302.) it is held that the Surrogate has power to revoke letters of administration which have been irregularly and improperly obtained upon false suggestion of matter of fact without due notice to the party rightfully entitled to administration, independently of the statute of 1837.

In *Dobke* v. *McClaran* (41 *Barb.*, 491), it was held that the Legislature, by repealing the provisions of the *Revised Statutes*, prohibiting the exercise of any jurisdiction, not expressly given by the statute above referred to, intended that the Surrogate should have incidental power to open, or correct a decree made through fraud, or mistake as to a material fact, and Mr. Justice SUTHERLAND said at page 494, " I think such power may be necessary to prevent the greatest injustice," and Mr. Justice LEONARD, at the same page, said, " the power of revoking letters of administration, irregularly and improperly obtained, or upon false suggestions, has been proved on sufficient authority."

By parity of reason, if a probate were refused by mistake, or misapprehension, the decree should be opened, and the application reheard; it is within the incidental power referred to in the cases cited.

In *Sipperly* v. *Baucus* (24 *N.Y.*, 46), it was held that the effect of the repeal by the act 1837, chapter 460, sec. 71 above cited of the restrictive clause, in respect to the

jurisdiction of Surrogate's Courts, (2 *Revised Statutes*, 221, sec. 1,) is to restore to such courts the incidental powers possessed by them previous to the Revised Statutes, citing the authorities which are above referred to.

In *Skidmore* v. *Davies* (10 *Paige*, 316), it was held that the remedy of a party aggrieved by an irregular *ex parte* order made by the Surrogate, is to apply to the Surrogate to vacate, or set aside the order, and not by an appeal to the Chancellor.

The authority above cited in the *Kellum Will* (50 N. Y., 298), does not sustain the principle urged by counsel for the executors and executrix. There is no intimation in the decisions that the Surrogate has not the power to open a decree of probate of a will of real estate. The learned Judge in that case holds that the effect of a probate of a will of personal property, and of real estate differs; as to *real estate*, it is not conclusive either as to the validity, or due execution of the will; but as to the probate of a will of personal property it is conclusive, until the same be reversed on appeal, or revoked by the Surrogate in the manner provided by the statute, or the will be declared void, by a competent tribunal. The Judge also states the reason why, in the one case, the statute provides for the making of allegations within one year, while there is no provision of that kind respecting a will of real estate; but there is no intimation in the opinion of that court, that the Surrogate has not the power as an incident to his office, to open, vacate, or modify a will of either kind.

The authorities above considered leave no reasonable doubt in my mind, that this court has the power, in a proper case, to set aside, open, vacate, or modify the order, or decree, admitting a will of real estate to probate.

But if any such doubt existed prior to the Act of 1870, chapter 359, it seems to be fully removed by the lan-

guage of the 1st section of that act made applicable to the Surrogate's Court of the county of New York, the latter clause of which reads as follows : " And the said Surrogate shall have the same power to set aside, open, vacate, or modify orders or decrees of the said court, as is exercised by courts of record of general jurisdiction." The terms and scope of this power are certainly very ample ; that courts of general jurisdiction have power to set aside, open, vacate, or modify the orders or decrees is pre-supposed by the section in question and it is a power which is generally exercised for the purpose of correcting mistakes, and relieving against fraud, &c. And I understand the power conferred by the section last named to be equal to that exercised by a court of equity, on a bill filed for the purpose of obtaining relief against a judgment, or decree, for fraud or mistake.

In the *matter of Brick,* after a most exhaustive discussion of the question, chief justice DALY (15 *Abb. Pr.* 12), at page 36, concludes as follows : " That the courts may undo, what has been done, through fraud, or upon the supposition that they had jurisdiction, or upon the assumption that the party was dead, who is living, or that there was no will—or they may open decrees taken by default, or correct mistakes, the result of oversight, or accident. These are all powers existing of necessity, and indispensable to the administration of justice, under which may be embraced any other exercise of jurisdiction of a like nature or character." And this decision, be it remembered, was made prior to the Act of 1870.

Having reached the conclusion that I have the power to entertain the petition in this matter, it becomes necessary to determine whether the petition may invoke that power as a legal *right*, or whether the petitioner

addresses himself to the discretion of the court, which discretion should be exercised with a just regard to the interests of the respective parties.

From an examination of the various authorities on the subject, and of the Act of 1870, I am persuaded that this petition should be regarded as an appeal to the discretion of this court, and not as a matter of absolute right.

By the term "discretion" is not meant such discretion as forbids a review in cases where that discretion shall be improperly or unlawfully exercised, but such a discretion as would justify the granting, or denial, of the application, according to the circumstances and equity of the case.

If it should appear as a part of the record, that the decree sought to be vacated, was absolutely void, it seems to me that the opening or setting aside of such decree would be a matter of discretion, the refusal of which would be justifiable, and would not be reversed on appeal, while in a clear case of equity, uncontradicted though addressed to the discretion of the court, if denied, it would be reversed on appeal.

It is objected by the petitioner's counsel that the Surrogate in this matter, obtained no jurisdiction for the purpose of admitting the will in question to probate, because of the alleged existence of heirs at law not cited, and that therefore the decree is absolutely void.

Without at present passing upon the question, whether a decree absolutely void is, for any purpose, an obstruction to the enforcement of the alleged rights of the petitioner, it is sufficient to say that on the proof furnished to the Surrogate in this case, he obtained jurisdiction over the probate of the will, and over the only persons entitled, upon that proof, to be heard.

It is quite clear to my mind that where a petition

shows a case conferring jurisdiction, the Surrogate has authority to act in the premises, and it is not true to say that the subsequent discovery of persons, who were entitled to an interest in the estate as heirs, would render the decree void. Such a state of facts would only render, the decree inoperative, as to the person so discovered to be entitled.

Suppose, as an illustration, that a testator should die leaving, as is supposed, but three children, and upon that assumption, the will should be probated, and many years thereafter, it should turn out that a fourth child supposed to be dead, was living, can it be seriously pretended that such a discovery would render a probate void? If so, most disastrous consequences might result to the estate and to those who had become possessed of it.

The most that could be said in such a case would be that the probate might be avoided, so far as the interests of the heir not cited is concerned, and that the probate for that purpose would be set aside, if at all, on appeal to the discretion of the Surrogate.

Indeed, is it not the fact that the counsel for the petitioner acquiesces in the continuance of the probate as far as the will relates to personal property, in his application to this court to open the same as a will of real estate, and that they recognize the fact that the Surrogate had jurisdiction to probate the will in question? For if they regarded the alleged probate as void for want of jurisdiction, it is quite clear they need no intervention of this court to relieve them of the effect of a void decree.

If, as I must assume for the purpose of this proceeding, the petitioner is an heir, it cannot be denied that, by the settled practice of this court, he was entitled to an opportunity to resist the probate of the will in question, and that if his relation to the testator had been known, and recognized before the probate of the will, he would

have been included in the citation, and afforded the opportunity of being present at the probate—and if he had been next of kin, so as to have entitled him, but for the will, to a share of the personal property, there would be no doubt of his right to an opening of the probate, so far as the instrument propounded was a will of personal property is concerned.

The cases of *The public administrator* v. *Peters*, 1 *Bradf.*, 100; *Skidmore* v. *Davies*, 10 *Paige*, 316; *Vreedenburg* v. *Calf*, 9 *Paige*, 127; *Bloom* v. *Burdick*, 1 *Hill*, 130; *Corwin* v. *Merritt*, 3 *Barb.*, 341; *Shelden* v. *Wright*, 5 *N. Y.*, 497; *Sibley* v. *Waffle*, 16 *N. Y.*, 180, cited by the counsel for the petitioner, seem to sustain his right to such an opening of the decree; but it is claimed on the part of the counsel for the executors and executrix, that as this application is addressed to the discretion of the court, its exercise may well be denied, because of the difference in the effect of the probate of a will relating to personal property, and one relating to real estate; and this brings me to the consideration of the final and more important question involved in this proceeding.

In *Harrison* v. *Ridley* (2d *Comyns Reports*, 589,) it was held that a bill of revivor did not lie by an assignee.

The assignee in that case filed a bill of revivor as assignee of one Beaumont who had been discharged as an insolvent debtor. Beaumont had exhibited his bill to be relieved against securities entered into by him to the defendant, and it was held that he had no such interest as to entitle him to sustain the bill.

In *Reid* v. *Vanderheyden* (5 *Cow.*, 719), WOODWORTH, justice, at page 733, uses this language: "It is an elementary principle recognized in all the books, that a person having no interest in the subject of dispute cannot be a party litigant; and I am not aware of a

single exception in any one of the courts according to the course of common, civil or canon law. To show the nature and universality of the rule, and illustrate and enforce it, we need only go to the doctrines of a court of equity—where the greatest possible latitude as to parties is indulged. There, not only must the original parties have an interest, but that interest is followed in all its changes * * * * even in cases of changes of bankruptcy or insolvency a bill must be filed in the nature of a bill of revivor,"—citing *Harrison* v. *Ridley*, (*supra*.)

Under the head of recission, cancellation and delivering up of an agreement, ex-judge WILLARD, in his Equity Jurisprudence (at page 304) says: "These classes are all referable to one common head of equity jurisdiction, the prevention of an injury that might otherwise prove irreparable, but it seems to be settled that a court of equity will not order an instrument to be delivered up and cancelled which upon its face is plainly illegal, and void;" nor a deed of lands, when it is certain from its nature and contents, it can throw no cloud upon the title of the plaintiff, nor a negotiable instrument that has been merged in a judgment; so of all kindred cases in which the plaintiff is exposed to no hazard from future litigation, and where it is certain that in no action founded on the instrument can recovery be had against him; and at page 307 the same learned author says: "It is quite clear that the cases on this subject, cannot all be reconciled, except by the general principle that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate, and that the resort to equity to be sustained, must be expedient either because the instrument is liable to abuse from its negotiable nature or because the defence arising on its face may be

difficult or uncertain at law, or from some other special circumstances, peculiar to the case and rendering a resort to equity highly proper, and clear of all suspicion of any design to promote expense and litigation. If, however, the defect appears on the bond itself, the interference of the court will still depend on a question of expediency and not on a question of jurisdiction."

In *Tripp* v. *Cook* (26 *Wend.*, 143), Senator VERPLANCK, after discussing the judicial meaning of discretion, at page 152, uses this significant language: "Judicial discretion is a phrase of great latitude, but it never means the arbitrary will of the Judge—it is always (as Chief Justice Marshall defined it), legal discretion, to be exercised in discerning the course prescribed by law: when that is discovered it is the duty of courts to follow it—it is to be exercised not to give effect to the will of the judge but to that of the law."

Such discretion may be exercised in relation to the convenience of courts, suitors, and the expedition of business, or upon the evidence as to some interlocutory matters, on which one tribunal could not well prescribe to or even advise another. A definition of judicial discretion seems to be necessary in this case, in order to determine the scope of the inquiry as to the judicious exercise of such discretion.

The right exercise of that discretion in this case, it seems to me, involves the rights and remedies sought by the petitioner if granted, and the effect of such relief upon the adverse party; and it is a judicial balancing of those rights, which constitute a right exercise of such discretion.

I now come to the consideration of the advantages which would enure to the petitioner, and the disadvantages and dangers which would be imposed upon the estate in question by an opening of the probate.

By chapter 238, of the Laws of 1853, it is provided that the validity of any actual, or alleged devise by a will of real estate, may be determined by the Supreme Court, the same as the validity of any deed, &c., and that any heir or heirs, claiming lands, tenements, or hereditaments, by descent from an ancestor, who died holding, and being in possession of the same, may prosecute for the partition thereof, notwithstanding any apparent devise by such ancestor, and any possession held under the same devise, provided that such heir or heirs shall allege and establish in the same suit, action, or proceeding, that such apparent devise is void.

In the matter of the *Kellum Will* (50 *N. Y.*, 298,) it is held that the probate of a will of real estate is not conclusive either as to the validity, or due execution of the will.

By section 748, of the Laws of 1869, the record of a will given in evidence is made effectual in all cases as an original will, if produced, and proved, and may in like manner be repelled by contradictory proof.

In *Woodhull* v. *Ramsey* (3 *Johns. Cases*, 234,) the probate of a will is held not conclusive upon the heir, and that the record is only *prima facie* evidence.

Under these statutes and authorities cited, there seems to be no doubt, that, *at most*, the probate of the will in question is only *prima facie* evidence, and that in any proceeding by the alleged heirs at law, of the testator, to enforce their alleged rights, in respect of the real estate, the force of that probate may be attacked.

It is entirely clear that this court has no power to grant to the petitioners any affirmative relief by which their rights to the real estate in question may be determined.

If the probate should be opened, would the petitioner be in any better position to enforce his alleged claim to

the real estate left by the testator, than he would if the probate remained? He must take proceedings in another court, by ejectment or partition, and must there show, that he is an heir entitled; and when he has shown that, the production of the probate would not be even *prima facie* evidence against his right, unless the party interposing the probate as an obstacle to the petitioner's claim, could show affirmatively that the petitioner was duly cited on the probate, and if he *were* so cited, under well settled authorities in such cases, he could attack the validity of the will, as though it were never proved.

Again, suppose the will had not been proved, and the heir should bring ejectment, he would have to produce some evidence of his title, and the devisees in the will would be compelled to produce the will, with sufficient evidence of its due execution; so that in any event, the opening of the decree would not relieve the petitioner from any embarrassment in respect to the proof of his title, but it would add somewhat to the burthen of the devisee in proving the execution of the will.

It was urged by counsel for the petitioner that under the statute of 1870, already cited, there was no authority for the claimant to raise the question as to the absence of jurisdiction of the Surrogate to probate the will, except by an application to the court to open or vacate the probate, because he was not a party to the proceedings and would therefore have no standing to appeal.

On a careful consideration of this objection, I am inclined to the opinion that any objection to jurisdiction, or otherwise in respect to the probate of the will in question, or its validity, or due execution, may be raised, in any proceeding instituted for the purpose of enforcing a claim to the real estate, and that the statute of 1870 would not effect a person who was not made a party to the probate.

Mr. Justice RAPALLO in the *Kellum Will* (above cited) uses this language: "as to the real estate, the probate is not conclusive, either as to the validity, or due execution, of the will; this question may be litigated whenever the rights to real estate claimed under the will are controverted."

It is to my mind entirely clear that in every proceeding, and in all stages of an action, even on appeal, the question of jurisdiction may be raised, and must be met. (*Ex parte Livingston*, 34 *N. Y.*, 555; *Brookman* v. *Hamill*, 43 *N. Y.*, 554; *Jones* v. *The Norwich and New York Transportation Company*, 50 *Barb.*, 193.)

On the argument, it was urged by counsel for the executors and executrix, that the moving papers did not show probable ground for denial of probate of the will in question, if opened, because of the improbability of Mr. Hilton influencing Mr. Stewart to devise his real estate to his wife, who would seem to have the best right to it, while Mr. Hilton, as he was not interested in the real estate, appears to have had no motive for the exercise of such influence.

But in this case, it would be unprecedented, as well as unjust, for this court, in passing on a preliminary motion to open a decree for the purpose of enabling the petitioner to adduce evidence not by affidavits, but by competent proofs, to determine the ultimate merits of the case, nor is it proper that I should express on this preliminary proceeding any opinion upon the subject of such an alleged improbability. Besides, as the will was made at the same time in respect to both kinds of property, and by the same testator, if undue influence could be proved, it might be quite difficult to determine that the influence did not affect the will in all its points.

Some observation and experience have led me to deplore the growing irreverent disregard by heirs at law

and next of kin of the last wills and testaments of those who by honest industry and prudence, may have acquired a moderate competence, or an abundance, and who pursuant to law have presumed to bestow their pittance or fortune, according to their free will, resulting in the dissipation of fortunes as well as of family concord, by dishonorable and unseemly legal contests, until the performance of a solemn duty has become an occasion of anxiety, lest its attempted performance should prove seriously detrimental rather than beneficial to those who are just objects of testamentary bounty.

These evils are more felt, and deprecated by those of moderate means than by the wealthy, and in a very great majority of cases, where wills are executed, the amounts devised or bequeathed are small, and yet upon such meagre bounties depend the sustenance and comfort of an affectionate and loved help-meet and the education of beloved and dutiful offspring, the solace of venerated parents, or perhaps, aid and encouragement of some worthy christian charity or public benefaction.

The interference with the deliberate and intelligent disposition of estates should not be encouraged, and particularly should the practice of rewarding experiments to overthrow last wills and testaments, by allowing contestants to receive from the estates compensation for their unwarranted assault upon them, be discouraged, and contestants, in case of failure, should be held to a rigid rule of good faith before they receive an allowance from the estate.

The questions involved in this proceeding are important, delicate and not easy of solution, because the authorities are very few treating upon them, but if I err in my conclusions, there is a ready and convenient mode of review by which such error can be corrected.

While the law should be administered with care, alike

in cases involving small and large amounts, and with absolute impartiality, yet in a case of the unprecedented magnitude of this proceeding, likely to affect such vast interests, and challenge public attention, it has seemed to me that extraordinary care and diligence should be observed in passing upon the questions involved.

If I am right in my estimate of the effect upon the alleged rights of the petitioner, and those whom he assumes to represent, in the opening of the probate, it seems to me that it would be an unwise and unjust exercise of the judicial discretion of this court to open the probate, where no practical and substantial benefit can enure to them, while it would be likely to throw discredit upon the tenure of the real estate devised to Mrs. Stewart, and paralyse the great enterprises now in progress.

For the reasons above stated, the petition should be dismissed.

Order accordingly.