NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—JANUARY, 1877.

## CARMAN *v.* COWLES.

*In the matter of the final Accounting of* R. CARMAN COWLES *and* JOSEPH F. DONNELL, *surviving trustee of* CHARLES E. CARMAN, *under the last Will and Testament of* RICHARD F. CARMAN, *deceased.*

On the final settlement of an account rendered by testamentary trustees, the Surrogate has power, upon written consent of the parties who have appeared, to distribute or apportion undisposed of assets or securities, among the parties in interest, in the same manner as on an accounting by executors and administrators.

Whether the practice that has prevailed, of allowing such distribution in case of securities over due, is sanctioned by the statute, *query?*

The guardian of an infant has no power to give the consent required by the statute, for the distribution, in kind, of unsold assets, unless authorized by a competent tribunal.

The Surrogate's Court has not power to grant such authority where the guardian is one appointed by another court.

The incidental powers of the Surrogate's Court are only such as are reasonably necessary to carry out the provisions of the statute, and such as may be inferred from its language to be necessary to · accomplish its objects.

THIS was a proceeding for the final accounting of R. Carman Cowles, and Joseph F. Donnell, surviving trustees, &c., of Charles E. Carman, under the last will and testament of Richard F. Carman, deceased.

The facts material to the decision were as follows:

Richard F. Carman died in July, 1867, leaving a will which was duly probated, whereby among other things there was devised and bequeathed to the trustees therein named as executors, one equal one third share of the residue of his estate in trust for his son Charles E. Carman, during his natural life, and after his death to his children equally, &c.

In 1870, the executors accounted, and they were

directed to set apart, and keep invested, $305,504.97, one third of the residue of the estate, for the benefit of Charles ; whereupon they proceeded to execute and carry out the trust until the death of one of the trustees, in September, 1872.   Since then, the survivors continued so to do.   On the 9th day of September, 1876, Charles died, leaving two children, Lucene Gunning, an adult, and Richard F. Carman, an infant.

On application to the Supreme Court, Rebecca B. Carman was appointed guardian of the person of Richard F. Carman, and the United States Trust Company, and the Union Trust Company, of the City of New York, were appointed guardians of his estate.

It appeared by the account now rendered that there was an estate of about $290,000 thus to be transferred by the testamentary trustees, one half to the adult, Lucene Gunning, and the other half to the Trust Companies appointed by the Court, and that a very large proportion of the assets consisted of twenty three mortgages upon real estate in the upper part of the city.   It seemed to be admitted by all parties that an attempt to convert these mortgages into money by foreclosure would result either in ruinous sacrifice to the *cestuis que trustent,* or in the necessity of bidding in the property on foreclosure ; and it was also represented by all parties interested, to be very desirable that in order to avoid this sacrifice there should be a division of these securities between the respective *cestuis que trustent.*   The question submitted to the court was, whether such division could be made under the circumstances.

De Witt, Lockman & Kip, *for the executors.*

————  ————, *in opposition.*

The Surrogate. — By section 72, 2 *Statutes at Large,* 97, (marginal paging, 93,) it is provided that on

final settlement by an executor, or administrator, the Surrogate may order, *upon the consent in writing* of the parties who shall have appeared, the delivery of any personal property which shall not have been sold, and the assignment of any mortgages, bonds, notes, or other demands not yet due, among those entitled to payment, or distribution, in lieu of so much money as such property or securities may be worth, to be ascertained by appraisement and oath of such persons as the Surrogate shall appoint for said purpose.

By section 66 (of 2 *Statutes at Large*, 97,) it is provided that a trustee, testamentary or appointed by any competent authority to execute any trust created by any will, &c., may render and finally settle his account before the Surrogate, in the county where the will was proved *in the manner* provided by law for the final settlement of the accounts of said executor, or administrator, and that the decree of the Surrogate on such final settlement may be reviewed in like manner, and that such decree shall have the same force and effect as a decree or judgment of any other court of competent jurisdiction on final settlement of such accounts.

I am of the opinion that by the latter section, the accounting by trustees, including the decree, may be conducted, and made in the same manner, and that the undisposed of securities may be distributed in kind, on like consent, as provided in section 72 above cited.

But it should be observed that section 72 above referred to, uses the term *personal property* evidently as tangible property, as contra-distinguished from securities, and that the authority to distribute securities in lieu of so much money, seems to be limited to such as are not due at the time of the consent and decree; and it is a very serious question whether securities past due, can be thus distinguished under the authority of that section.

There may be, and doubtless was, in the minds of the revisors, a good reason for providing for the distribution of unmatured securities, which would be likely to occasion a sacrifice in the event of a forced sale, while the presumption would be, that securities past due might be enforced by executors, or administrators by legal proceedings in the usual way.

Though I am not able to find any adjudication upon this subject, and the practice of this office, as I am advised, has been otherwise, yet it seems to me that the words, "not yet due," limit the power of distribution to such securities.

In this case it does not appear whether the mortgages in question are past due, or not.

If, however, I should feel disposed to follow the practice hitherto prevailing in this Court, upon this subject, the next important question which arises is, as to the authority of the general guardians of the infant in this matter, to consent in writing to the distribution asked for; and that question involves the authority of a general guardian in respect to the rights of his ward.

While acting within the scope of his power, a guardian is only bound to fidelity and ordinary diligence and prudence, in the execution of the trust (*White* v. *Parker*, 8 *Barb.*, 48). Where a guardian invests money of his ward in promissory notes of a person in good credit, and takes what he regards as reasonable security for its payment, he is held to act in good faith and with sound discretion; and although the maker of the note fail and the securities become inadequate to its payment, the guardian is nevertheless not responsible for the loss. (*Lovell* v. *Minot*, 20 *Pick.*, 116.) In *White* v. *Parker* (*supra*), it is held substantially that a guardian cannot compromise a claim due to his ward with a former guardian, and consent to his discharge; and at page

27, Mr. Justice MULLET, says: " The question in such a case is, not whether the guardian intended to defraud his ward or not, or whether the disposition which he made of his ward's property was beneficial or not, but whether he had power to bind his ward by such transaction, without his consent; and if he had not such power, a ward is not bound by the act of a guardian."

In *Lathers* v. *Fish* (4 *Lans.*, 213), it is held that the guardian of an infant cannot submit a controversy under section 372 of the code; and Judge LEARNED, in discussing the question at page 214, says : " It is a well-known principle that no guardian in an action is to be allowed to make any admission in behalf of infants. Whenever infants are a party to an action, the facts must be proved against them." In *Battell* v. *Burrill* (50 *N. Y.*, 13; affirming 10 *Abb. Pr. N. S.*, 97;) it is held that a general guardian has no power, under the act of 1833, incorporating the village of Brooklyn, to consent to the taking of property for opening of a street. Indeed, the authorities are numerous that a guardian may not admit a cause of action, or consent to a bill taken by confession.

I am of the opinion after careful reflection, and such diligent examination of the authorities as I have been able to make, that the general guardian has no power to consent to the distribution of the securities in this matter, pursuant to the 77th section of the *Revised Statutes*, above cited, by virtue of his office, without the authority of some competent tribunal permitting him to do so.

The fact that the section of the statute above cited, provides for such distribution by executors and administrators, and, as I am inclined to hold by analogy, testamentary trustees, requires the consent of the parties appearing, is satisfactory to me that there is no such power without that consent.

Has this court such control over the guardian in question as to authorize him to consent, or to make his consent valid in such a case ?

It is quite common for attorneys to urge that this court has all the powers of a court of chancery in such a proceeding, but such is not the case. It is true the 2d *Revised Statutes,* page 221, section 1, which provides that the powers conferred upon this court should be exercised in the cases, and in the manner prescribed by the statute for the Surrogate's Court, and in no *other,* and that no Surrogate should under pretext of incidental power, or constructive authority, exercise any jurisdiction whatever, not expressly given by some statute of this state, was repealed by chapter 460, of the laws of 1837, section 7 ; yet the effect of that repeal only gave to a Surrogate the powers which he possessed theretofore, which were incidental and necessary to a proper exercise of the functions of the court. (*Sipperly* v. *Baucus,* 24 *N. Y.,* 46 ; *Brick's Estate,* 15 *Abbott Pr.,* 12.) But this court is of peculiar and special jurisdiction, and can only exercise the jurisdiction and powers, which by a favorable construction of the statute may be found to have been conferred upon it. (*Sibley* v. *Waffle,* 16 *N. Y.,* 180 ; *Cleveland* v. *Whiton,* 31 *Barb.,* 544.) But the incidental powers are such as are reasonably necessary to carry out the provisions of the statute, and as may be inferred from its language as necessary to accomplish its objects.

It is quite clear that there is no power in the court to enlarge the authority of a general guardian, or to authorize him to do what he might not do, without that authority, in this case, for the guardians of the infant in this matter were appointed by the Supreme Court. I am of the opinion that this Court has no authority over such guardians, at the present time, for they are

the officers of a different tribunal, and do not come within the jurisdiction and authority of this Court by virtue of such appointment, or of any claim to property under the authority of their appointment.

When they shall become possessed of any portion of the estate in question, then doubtless, in respect to that estate, they will come within the authority and be bound by the order of this Court, in respect thereto, when made in conformity to the statutory authority thereof. By 2 *Revised Statutes*, 220, section 1, subdivision 6, the Surrogate is given authority to administer justice in all matters relating to the affairs of deceased persons, according to the provisions of the statutes of this state.

It is quite clear that the Supreme Court, exercising equitable powers, and having general authority over the conduct of the guardians appointed by it, has the power to authorize guardians, in such a case, to consent to the distribution of the estate as proposed ; but as such distribution by this court is dependent upon the *consent* of the parties appearing, and as I am of the opinion that a general guardian, by virtue of his office, has no such authority, however beneficial it may appear to be for his ward, and as this court has no power to authorize such consent, I cannot resist the conclusion that I have no power to permit such distribution, so as to bind the infant, when he shall become of age, if he shall seek to repudiate such distribution.

I have reached this conclusion with great reluctance, and against a strong desire to reach a different conclusion, for the reason that it is entirely apparent that any attempt to foreclose the mortgages in question, or to convert them into money at this time, would result in serious loss to all the parties concerned.

And if this court possessed the general powers of a court of chancery, in such cases, I should not hesitate

to exercise it in the obvious interest of the infant; but in the absence of such authority, and of the required consent of the parties, I must deny the motion for distribution in kind of the securities mentioned.

Order accordingly.