In the Matter of the Judicial Settlement of the Account of
ROBERT ELLIS, as Sole Surviving Executor and Trustee
under the Last Will and Testament of SAMUEL BURDEN,
Deceased.

ROBERT ELLIS, as Sole Surviving Executor and Trustee, etc.,
Appellant, Respondent; HENRY BURDEN and JANE PETER-
SON, Appellants, Respondents; ROBERT BURDEN and Others,
Respondents.

Second Department, January 26, 1917.

Executors and administrators — judicial accounting of executors —
commissions.

Appeal from a decree of the Surrogate's Court judicially settling the
accounts of an executor and testamentary trustee. Owing to the execu-
tor's delay in distributing the estate the surrogate denied commission.
Evidence examined, and *held*, that the decree should be affirmed, except
as to the executor's commissions and that the proceeding should be
remitted to the Surrogate's Court for amendment in this respect.
*Held, further*, that the executor was not entitled to compound interest,
there being no express contract therefor by the heirs and devisees.
JENKS, P. J., dissented in part, with opinion.

SEPARATE APPEALS by Robert Ellis, as executor and trustee,
and by Henry Burden and another, heirs at law and legatees,
from a decree of the Surrogate's Court of the county of Queens,
entered in the office of said Surrogate's Court on the 6th day
of November, 1913, judicially settling the accounts herein.

*George Finck*, for the appellant Robert Ellis, as sole surviv-
ing executor, etc.

*Ira G. Darrin*, for the appellants Henry Burden and Jane
Peterson.

*William W. Gillen*, for the respondents Robert Burden
and others.

JENKS, P. J.:

The decree of the surrogate should be affirmed. The testa-
tor, who died in 1893, left a widow, three sons and a daughter
his only heirs and next of kin, of whom all were then of full

age and of sound mind. The will probated in that year devised all of his estate to this executor and to Brady in trust for the benefit of the widow for her life, and directed upon her death conversion into money as soon as practicable, provided the realty could be sold to advantage, and immediate distribution equally among the said sons and daughter. Brady died before entering upon any duties, and the administration devolved upon this executor alone. The estate consisted entirely of realty in the county of Queens, unimproved save by a small house. The land was upland and swamp. The executor and trustee never made any distribution. He accounted finally in December, 1912, when compelled to do so. There is some reasonable explanation of the delay to be found in the fact that public improvements contemplated the acquisition of the land; that there was naturally an interval between the project and the work, and, moreover, that condemnation proceedings were instituted. The value seems to have been greatly enhanced by the said public improvements, and, although the widow died in 1895, the executor could not be blamed in that he stood at gaze and held the land in order to gain the benefit of such increase. He received damages for the failure of Long Island City to take a part of the land for park purposes, and for the taking of a part for other public purposes. Chief among them was the construction of the Blackwell's Island bridge. In 1898 the executor and trustee received two sums of $6,000. In 1910 he received $107,000 and $2,500. His account shows his total receipts as $124,245. The said sum of $107,000 represented three-quarters of the land left, and there then remained but a gore about 137 by 1,658 feet. But no good reason appears why the executor could not have made distribution from time to time as requested by the heirs, who were forced to make applications to the Surrogate's Court for intermediate accountings. And the delays, so far as chargeable to the executor before 1910, after that time changed to obstructions. For when, upon the receipt of the award in that year, the heirs applied in the Surrogate's Court for a final accounting and conveyances of the land not disposed of, they were met by his opposition. And a few days before the return of the petition in that court he began an action in the Supreme Court, First Department, for a construction of

the will, an adjudication of his final account, and an injunction upon the said Surrogate's Court. Upon issue joined the action in the Supreme Court was tried in March, 1911, when the Special Term dismissed the plaintiff upon the grounds that there was nothing that called for a construction of the will, and that the executor had been cited to account in a proper forum. The court cited *McDonald* v. *O'Hara* (144 N. Y. 566) to sustain the right of the remaindermen to take the real estate unconverted. The executor appealed, escaped dismissal for laches, but was met by an affirmance by the Appellate Division without opinion. (146 App. Div. 912; Id. 940.) The executor had been ordered to account in the Surrogate's Court on June 10, 1910, and appealed to this court. His appeal was dismissed on consent, his account was filed in December, 1911, and the hearings on the objections were begun in March, 1912.

The surrogate denied commissions.

I fail to find any justification for the resistance to a final account in the Surrogate's Court, for the institution of the action in New York county and particularly for the appeal taken therein. I see no good reason why the account, that contains but comparatively few items, could not have been presented in 1910 and have been brought on forthwith for settlement, even if a contest thereon was inevitable. I do not find, nor do I think, that the executor has been dishonest. But it does seem that he has been dilatory when he might have been diligent; that he has been lax when he might have been prompt; that he has obstructed when he might have facilitated the winding up of his trust. In such course he has not only attempted to charge the estate with unnecessary legal expenses, but he has put the heirs to outlays in seeking to collect what was due to them. One of his counsel admitted on cross-examination that from 1902 until the filing of this account the executor had never filed a voluntary account, but that every proceeding testified to by him was instituted by the heirs or some of them. The executor testified that he did not know — he could not recollect whether he brought the action in the Supreme Court to prevent his accounting in the Surrogate's Court. He admits that he authorized an appeal from the judgment thereon, although

he knew that the Special Term had decided that there was no merit in his action and had denied him costs. He did not know how the judgment affected him, unless it might not be right for them to get the property —to which he had no objection, for he was "glad to get rid of it." The executor never kept any books of account. He employed from time to time an unnecessary number of attorneys. He paid considerable legal fees in the action brought in the Supreme Court. He paid, from time to time, to various attorneys for legal services, including disbursements, $22,358.52, when his receipts amounted to but $124,245.69, practically the entire value of the estate. The executor was 70 years of age and had retired from business. Doubtless he had been the longtime friend of the testator and had come to the relief of the testator and his children with financial aid and with good offices, but these social relations are quite foreign to the dealings of an executor and trustee with the estate committed to his charge.

I think that the provision that deprives the executor of commissions should not be disturbed. The statute (Code Civ. Proc. § 2730; now Code Civ. Proc. § 2753, as amd. by Laws of 1914, chap. 443, and Laws of 1916, chap. 596) does not afford them as an absolute right. There was some discretion in the surrogate. (*Matter of Rutledge,* 162 N. Y. 31.) The question was whether services had been rendered that were beneficial to the estate, and if not, or if the doings of the executor were prejudicial to the just and lawful administration of the estate, the surrogate was justified in his denial. (Id. 34.) In *Stevens v. Melcher* (152 N. Y. 583) the referee found that the executor had not faithfully discharged her trusts, had not kept an account of her receipts and disbursements, had not taken proper vouchers for disbursements, had promoted unnecessary and vexatious litigation, had insisted upon unjust and unreasonable claims and had made frequent and unexplained changes of counsel, to the prolongation of the trial of the action and to the expense and delay of the parties interested in obtaining a settlement. In *Matter of Matthewson* (8 App. Div. 12) the court say: "These commissions, being for services, should be denied, unless the services have been performed in such a manner as those interested in the residue of the estate had a

right to expect." The court then details certain negligences and shortcomings that are somewhat similar to those of this executor. (See, too, *White* v. *Rankin*, 18 App. Div. 293.)

The court reduced the compensation of the principal attorneys in the various condemnation proceedings, in round numbers, including disbursements, $18,000 to $10,000. All parties are dissatisfied with that disposition, for the contestants insist that the amount is still far too large. The matter was the subject of expert legal testimony, and, not unnaturally, the opinion of such witnesses was far apart, for there was evidence that the charge was proper, and evidence that it was too great by two-thirds. Of course, the testimony of the experts was in no sense controlling upon the court. (*Head* v. *Hargrave*, 105 U. S. 45; *Reves* v. *Hyde*, 14 Daly, 431; *The Conqueror*, 166 U. S. 131.) And it was not adduced before laymen. In *Gross* v. *Moore* (14 App. Div. 356) the court, per RUMSEY, J., say: "In judging of the value of legal services, it is proper to consider the time occupied by them; the difficulty of the questions involved; the nature of the services rendered; the amount involved in the litigation; the professional standing of the counsel who claim pay for services, and, to some extent, the result which has been reached. It is apparent that the last consideration can bear little, if any, upon the amount of work which has been done, but yet it is always accepted as a proper element to be considered in reaching the value of the services which have been rendered; and for that reason, while it is entitled to but little weight, yet it must not be forgotten." The executor himself admitted that he had told one of the heirs that the charge of $18,000 was too much, and that he had shown him a "paper" that the lawyers had given to the effect that they would return any part of such fee that was disallowed.

I think that the executor was not entitled to the items of interest upon interest that were objected to. The learned counsel for the executor state in their points that no interest was paid during the lifetime of the mortgagor (the testator), and none thereafter until 1895. It appears that the executor, as representing the mortgagor, paid such interest to himself personally as mortgagee, and there is little or no probative force

in such circumstance that permits the inference of a contract therefor. Moreover, in *Young* v. *Hill* (67 N. Y. 171), the court say that "There can be no valid contract without a consideration to support it, and the right to compound interest depends entirely upon contract expressed, or, in *mercantile transactions*, implied from the mode of dealing with former accounts or from custom." And I cannot find that the executor contends that there was any express contract by the heirs or devisees that there should be any compound interest, and they deny it.

Although I have considered the many other objections which were the subject of a protracted and bitter contest, I do not think it necessary to discuss them.

The decree of the Surrogate's Court of Queens county should be affirmed, without costs of this appeal to any party.

Thomas, Rich and Putnam, JJ., concurred in all respects, except as to the executor's commissions, which part of the decree they voted to reverse and to remit the proceeding to said Surrogate's Court in order that the decree might be amended so as to allow commissions to the executor except upon the value of the land taken over by the heirs; Carr, J., not voting.

Decree of the Surrogate's Court of Queens county affirmed, without costs, except in so far as it relates to disallowance of executor's commissions.