In the Matter of the Estate of JOSEPHINE L. E. HALLOCK,
Deceased.

HELEN E. H. JEWETT, as Executrix, etc., of JOSEPHINE L.
E. HALLOCK, Deceased, Appellant; GEORGE W. EISENHART,
Respondent.

Third Department, November 12, 1925.

Executors and administrators — accounting — claim of co-executor, who
is attorney, for legal services — executor not entitled to pay as attorney
for executorial services — amount of claim reduced — hypothetical
question submitted to attorneys as experts criticised — rule governing
value of services stated.

A claim by a co-executor, who is an attorney, based on alleged legal services ren-
dered by him to the estate, is reduced from $2,000 to $1,000, in view of the fact
that much of the work done by the claimant was of an executorial nature and
not such as demanded the services of an attorney; that his services as attorney
for the estate did not save the estate any great amount of money; that some of
the services for which he claims compensation were rendered for the personal
benefit of his co-executor; and that the estate is not large and its administration
has not presented any unusual or extraordinary feature.

A hypothetical question submitted to other attorneys, as experts, which covers
seventeen pages of the printed record, and which magnifies and exaggerates the
services for which the claimant is entitled to recover, and blends legal and
executorial services and is largely composed of unimportant details, is criticised
on the ground that unless a hypothetical question is fair and presents a true
picture, the answer to it necessarily possesses no convincing power.

The claimant is entitled to recover for services rendered in the preparation of
necessary legal papers, in the making of necessary searches, for his appearances
in court, and for the use of information which he possessed as an attorney
and which ordinarily would not be possessed by an executor who is not an
attorney, but his compensation should be made commensurate with the magni-
tude of the estate, the difficulty of the work performed, and the results obtained.

APPEAL by Helen E. H. Jewett, as executrix, from a decree of the
Surrogate's Court of the county of Broome, entered in the office
of said Surrogate's Court on the 26th day of March, 1924, which
awards to the respondent as compensation for legal services herein
the sum of $1,600 in addition to $400 previously paid.

*Charles W. Strong*, for the appellant.

*Frederick J. Meagher*, for the respondent.

COCHRANE, P. J.:

The will of Josephine L. E. Hallock, deceased, was admitted to
probate March 23, 1922. Letters testamentary were issued to
Mrs. Jewett, the appellant, and to the respondent, Mr. Eisenhart,
who were jointly named as executors therein. The gross amount
of the estate is about $35,000. By the will the residuary estate

was given to Mrs. Jewett, the only child of the testatrix, for use during her life with the remainder to her two children. She is a resident of Buffalo. Her husband is an attorney at law, but for a number of years has not been actively engaged in the practice of his profession. He, however, represented his wife in the administration of this estate. Mr. Eisenhart resides in Binghamton, where the will was admitted to probate. He rendered services both as executor and attorney down to and including the judicial settlement of the account of the executors. He did not prepare the petition for the accounting or the account, but he appeared in that proceeding and interposed some objections. That proceeding was apparently suspended to await the result of this proceeding, which was instituted by the respondent for the purpose of having the amount of his compensation as attorney determined by the surrogate. On June 1, 1922, he was paid $400 in full for services to that time. The will had then been admitted to probate, the appraisal of the estate had been made, although the inventory had not yet been filed, and the transfer tax proceeding had been instituted. The respondent contends that he had then been occupied about ten days in rendering legal services and that he has since rendered services aggregating about fifty-five days; that his entire services were worth $2,000 which would be approximately $30 a day. The evidence on the part of the appellant is to the effect that his legal services for which compensation has not been paid were worth $300 or $400. The surrogate sustained the contention of the respondent and allowed his claim at $1,600 in addition to the $400 previously paid. We are constrained to differ from the conclusion of the surrogate.

Formerly an executor who happened to be an attorney was not at liberty to charge the estate for legal services. Now, under section 285 of the Surrogate's Court Act, he may receive compensation for legal services rendered in connection with his official duties. It is clear, however, that the burden rests on him to establish the nature and extent and value of the services performed by him as an attorney as distinguished from those which the law requires him to perform as executor. The line of distinction need not be difficult to draw. The respondent himself on his cross-examination very well defined the distinction as follows: " What any layman could perform or was capable of performing would be strictly executorial duties." That rule has not been observed in this case.

As previously stated, respondent was paid for his services rendered prior to June 1, 1922. From June 2 until June 12, 1922, he says he " worked almost continuously on matters pertaining to the

inventory of estate and had a number of conferences " with one of the appraisers in relation thereto. It appears that Mrs. Eaton, the mother of Mrs. Hallock, died in the year 1902 leaving the residue of her estate to Mrs. Hallock during her life and after her death the principal was to go to Mrs. Jewett, the only child of Mrs. Hallock. Mrs. Hallock was the executrix of her mother's estate and commingled the trust fund with her individual property. She never accounted as executrix. The ten days claimed to have been occupied by the respondent from June second to June twelfth were devoted to an effort to segregate the trust property from the individual property of Mrs. Hallock. He made searches in the surrogate's office and in the county clerk's office in an effort to acquire information. The only important information acquired consisted of an affidavit which had been filed with the Comptroller in reference to the transfer tax due the State, a copy of which affidavit was in the possession of Mrs. Jewett, and from which the amount of this trust fund was fixed at approximately $9,800. This of course was an individual claim of Mrs. Jewett. It was not the duty of the respondent to establish facts in support of that claim. It was rather his duty to protect the estate against it as far as that could consistently be done. Certainly it was not his duty at the expense of the estate to render services which could only be advantageous to Mrs. Jewett in her personal capacity. She seems to have manifested no interest in the claim, for the very obvious reason undoubtedly that it involved a question only between herself and her children. The effect of the respondent's efforts was to give her absolutely $9,800, whereas if she remained quiescent, as she seems to have been disposed to remain, that amount would form part of the residuary estate under her mother's will, the use of which she would have for life with the remainder to her children. These services of the respondent did not benefit the estate and were not such as he was called upon to perform either as an executor or as an attorney. In June, 1923, respondent submitted to his co-executor or her husband an itemized statement of all his services for which he claimed compensation down to that time. No mention is therein made of any of these services in connection with the Eaton estate for which he later claimed compensation. The omission was not an oversight. The only inference is that he did not at the time deem those services chargeable against the estate. But there is an intimation in his testimony that this claim was used for the purpose of reducing the transfer tax in this State and in the State of New Jersey and it was successfully used for those purposes. The total transfer tax in New Jersey was sixteen dollars and sixty-one cents. We are not informed as

to the amount of tax in this State nor how much taxation was saved to the Hallock estate by the method employed, but it is safe to say that any saving in taxation was greatly overbalanced by the legal charges claimed for the rendition of the services in connection therewith. The executors sold the homestead where Mrs. Hallock resided. Her furniture was moved from the homestead to Buffalo. The truckman drove over the sidewalk and the purchaser of the property made claim for damages amounting to thirty-seven dollars and fifty cents. Mrs. Jewett made a claim of twenty-five dollars against the truckman for damages in moving the furniture. The purchaser of the premises made a claim for sixty dollars for an installment of taxes which became payable after he acquired title. These three items play quite an important part in this claim for compensation. The respondent finally testified that his services in connection with those three matters were worth one hundred dollars. The estate was saved sixty dollars, the amount of the disputed tax. There was no litigation and no claim was ever made for damages to the sidewalk in excess of thirty-seven dollars and fifty cents which was paid by the estate. It was all a matter of conference and adjustment although the respondent claims to have spent considerable time in examining the law on these questions. In respect to the New Jersey transfer tax proceeding, blanks were furnished to the respondent for that purpose and he occupied four days in filling out those blanks and as he says in examining the law in reference thereto. The blanks when filled out were sent to New Jersey and were accepted and the tax against the estate was assessed at sixteen dollars and sixty-one cents. The estate included real estate mortgages. In respect to three of them the persons liable for payment were unknown. Respondent examined the records in the county clerk's office to ascertain who held the title. Inquiry was necessary in respect to two of these mortgages to locate the owners of the property. In respect to two of the mortgages respondent prepared papers to foreclose the same. No foreclosure was necessary. Preparation of papers in anticipation thereof was superfluous. The mortgages were all paid in full within a reasonable time. There were conferences in regard to some of them but none of a nature which could not have been conducted by any business man. Location of the parties, demand for payment, and even threats of foreclosure if necessary were executory acts such as are ordinarily performed by any owner of a bond and mortgage. The itemized statement for services rendered by respondent in June, 1923, contained no reference to the preparation of foreclosure papers. The main features of respondent's claim have thus been analyzed. Further

analysis we deem unnecessary. There was much correspondence between respondent and Mr. Jewett, representing the other executor, and this correspondence has improperly for the most part been made the subject of a legal charge. It was the duty of the executors to confer and co-operate with each other. Living in different places correspondence was necessary but it was purely executorial. The executors seemed to get along harmoniously until the final settlement of the estate when the bill of the respondent aroused the only substantial controversy between them. It must be remembered that Mr. Jewett as an attorney might also receive compensation for certain services similar to those performed by the respondent if the latter is entitled to recover for the same. We make no criticism of the testimony of the attorneys who were called by respondent to testify as to the value of his services. They were answering a hypothetical question covering more than seventeen pages of the printed record. The question magnified and exaggerated the services for which respondent was entitled to recover and blended legal and executorial services and was largely composed of unimportant details. Two pages of this question were devoted to the Eaton matter and matters affecting the completion of the inventory. Three pages were devoted to the three items of the tax on the homestead, damages to the sidewalk, and damages to the furniture aggregating one hundred and twenty-two dollars and fifty cents of which sixty dollars was saved to the estate and in respect to which the respondent himself testified that his services were worth one hundred dollars. One page was devoted to the transfer tax proceedings in New York and one page to the transfer tax proceedings in New Jersey. Nearly five pages were devoted to the collection of the mortgages, all of which were collected without legal proceedings. Our criticism is not leveled at the answers to this question but to the question itself. Unless a hypothetical question is fair and presents a true picture the answer to it necessarily possesses little or no convincing power. An executor who happens to be an attorney is not at liberty to take advantage of his dual capacity and charge as an attorney for services which as an executor he is required to perform. Respondent should be paid for the preparation of necessary legal papers and for necessary searches and for his appearance in court and for the use of such information which he possessed as an attorney and which would not ordinarily be possessed by an executor who was not an attorney. But such compensation should be made commensurate with the magnitude of the estate, the difficulty of the work performed, and the result obtained. Here we have a comparatively small estate. There was no litigation or serious

complication of any kind nor any unusual or extraordinary feature unless it was the New Jersey transfer tax proceeding and the matters of the small transactions involving $122.50 heretofore discussed. It is rarely that an administration of an estate is more simple in its details than was this. The work was almost entirely of a routine nature and the legal services were not onerous nor did they add much to the responsibility of the respondent in· addition to what he agreed to assume when he accepted the office of executor. Having due regard for all the circumstances, we think that $600 is reasonable compensation for all legal services rendered by respondent for which compensation has not heretofore been made.

· The decree should be modified by reducing the amount awarded ·respondent to $600 and the allowance of costs to $100, and as so modified affirmed, without costs. The court disapproves of the second and third findings of the surrogate and finds as a fact that the reasonable value of the services of respondent as an attorney, for which compensation has not been made, is the sum of $600.

Decree modified by reducing the amount awarded to respondent to $600 and the allowance of costs to $100, and as so modified unanimously affirmed, without costs. The court disapproves of the second and third findings of the surrogate, and finds as a fact that the reasonable value of the services of respondent as an attorney, for which compensation has not been made, is the sum of $600.