In the Matter of the Estate of F. WILSEY OWEN, Deceased.

Surrogate's Court, Richmond County, September 19, 1932.

*J. Harry Tiernan*, for the executor.

*L. W. & A. B. Widdecombe*, for residuary legatee and devisee, contestant.

SMITH, S. The residuary legatee objects to the executor being allowed the sum of $2,500 shown by his account to have been paid by him to his attorney for legal and other services, on the ground that the amount is unreasonable, as certain of the services performed and charged for were:

1. Not a proper charge against the estate.
2. Services which should have been performed by the executor.
3. Clerical services charged for on the basis of legal services.
4. Unnecessary services.
5. Services on accounting for which the costs are fixed by the surrogate.

And further that if the probate proceeding, as conducted by said attorney, is determined to be defective for the reason that the facts in relation to the heirs, or lack of heirs, of the decedent

were not properly set forth in the petition so as to confer jurisdiction upon the court to make an order of publication, then that all services performed by the attorney for the executor were without value to the estate.

Considering first the question of the sufficiency of the attorney's services in the probate proceeding in relation to his charges for services for said estate, it appears that the petition was drawn upon the usual form and that following the printed part " That * * * all the heirs, and all the next of kin of said testator * * * are hereinafter mentioned * * * in subdivisions A, B, C and D hereof, as follows: A. The following named persons who are of full age and of sound mind," it sets forth " That *petitioner* was unmarried and left *no heirs* at law or next of kin, him surviving, according to the best knowledge, information and belief of your petitioner," and the petition prays (printed) " That an order be granted directing service upon * * * and also upon the persons hereinbefore described and included in those subdivisions who and whose names or residences and post office addresses are unknown."

No statement was made as to the source of the petitioner's knowledge or information, and no affidavit was presented in relation thereto, and yet an order of publication based upon said petition was made reciting: " It appearing to my satisfaction by the petition of William J. Kane, sole executor * * * that said decedent left him surviving *no known heirs at law and next of kin* * * * Now on motion * * * it is ordered, that service of the citation * * * upon John Doe and Richard Roe being the *unknown heirs at law and next of kin* of said F. Wilsey Owen, deceased, be made by publication."

A citation was issued and was published as required by said order directed " to the Attorney-General of the State of New York, and to *all unknown heirs at law and next of kin of the husband, widow, heirs and next of kin*, executor and all persons interested in the estate of F. Wilsey Owen."

Although the petition upon which the order was made stated a conclusion in saying that there were no heirs at law of the testator, it was evidently a conclusion based upon knowledge, and if there were no heirs an order of publication was unnecessary (*Bailey* v. *Stewart*, 2 Redf. 212; *Bailey* v. *Hilton*, 14 Hun, 3); but the surrogate, when he signed the order, presumably had in mind the presumption that every person dying leaves one or more heirs at law entitled to take his property (*Ettenheimer* v. *Heffernan*, 66 Barb. 374; *New York Central & Hudson R. R. R. Co.* v. *Cottle*, 102 Misc. 30; *Matter of Clarke*, 131 App. Div. 688), and was satisfied that even if the petitioner was mistaken as to lack of heirs of the dece-

dent that publication against unknown heirs, if any such existed, would give the court jurisdiction over them and would bar them from thereafter moving successfully to open the decree, but such was not the case. Section 57 of the Surrogate's Court Act requires that the petition, or an accompanying affidavit, " set forth to the satisfaction of the surrogate the facts which show that the case is one of those specified in section fifty-six of this act and that the petitioner has used due diligence to ascertain the names and post-office addresses of the parties whose names or post-office addresses are unknown."

The petition showed that no heirs existed, but the order of publication was made in relation to unknown heirs of whom no mention was made in the petition except in the printed prayer and an order of publication would not give jurisdiction over unknown heirs unless there was a compliance with section 57 aforesaid, and without such proof the surrogate had no jurisdiction to order publication against unknown heirs.

The courts have uniformly held that the validity of an order of publication of citation must be judged solely upon the statements in the affidavit or petition upon which it was granted (*Matter of Gahn*, 110 Misc. 96; *Fink* v. *Wallach*, 47 id. 247), and have even held that where the essential facts upon which an order for other than personal service is based are erroneously stated, service made thereunder is null and void. (*Clarkson* v. *Butler*, 173 App. Div. 143.) And what would be the effect where no facts of any kind in relation to unknown heirs are stated? Clearly no jurisdiction over them would be obtained, and the decree upon probate would not be conclusive against them. However, it has been held that whether the decision of the Surrogate's Court is right or wrong, as long as the various decrees stand unreversed they are binding and valid adjudications and this irrespective of whether the parties are infants or adults. (*Matter of Hood*, 90 N. Y. 512; *Matter of Tilden*, 98 id. 434; *Matter of Jarvis*, 110 Misc. 5; *Matter of Hawley*, 100 N. Y. 206.)

The probate proceedings should have been so conducted that jurisdiction would have been obtained against any unknown heirs, if any existed, and the presumption is that such heirs exist, so that section 80 of the Surrogate's Court Act, that " Every decree of a Surrogate's Court is conclusive as to all matters embraced therein against every person of whom jurisdiction was obtained," would apply.

The probate proceeding was not, however, without value to the estate as the admission of the will to probate permitted the necessary proceedings to be carried on to reduce the estate to possession

and settle the same by enabling the residuary legatee to receive what was given to her by the will, but the services were not, however, of the value that they would have been had the proceeding been so conducted that jurisdiction had been obtained over the unknown heirs, and jurisdiction cannot be conferred by subsequent filing of proofs supplying the defects. (*Silver* v. *Lind Realty Co., Inc.*, 222 App. Div. 768.)

Considering next the objections numbered 1, 2, 3, 4 and 5.

1. The services in relation to the burial of the decedent, performed by the attorney, objected to, as not proper charges against the estate.

From the testimony on the hearing as to the objection, it appears that the decedent had been a friend and the secretary of the attorney for the executor when said attorney was the county judge and surrogate of Richmond county, and that when decedent died the attorney for the executor made arrangements for the burial, and spent nearly two days' time in so doing, and charged for his services on the same basis as charged for his legal services in the matter of this estate. Such services were not in any sense legal services, if not originally meant to be gratuitous, and even if the executor and the residuary legatee consented thereto, there must be proof of value to make the estate liable; no such proof was made and, in the absence thereof, no allowance can be made therefor. In no event could such services be charged for at the rate charged for legal services, any more than executorial services could be charged for at the same rate.

No allowance can be made to the executor for his attorney's services in relation to the burial of the decedent.

2. The executorial services performed by the attorney objected to as services which should have been performed by the executor.

The testimony of the attorney for the executor showed that he had substantially performed all of the duties of the executor, such as marshalling the assets, collecting the bank accounts, etc., preparing checks for the payment of debts and expenses, paying the creditors, arranging for a stone at the grave of decedent, in fact that he had performed nearly all of the executor's duties except signing the executor's name to papers and checks, all of which was charged for as legal services.

The distinction between executorial and legal services is stated in *Matter of Hallock* (214 App. Div. 323) as " What any layman could perform or was capable of performing would be strictly executorial duties."

*Matter of Van Nostrand* (3 Misc. 396) also defines what cannot be allowed for as legal services.

No allowance can be made to the executor for the amount paid to his attorney for any of such services. (*Matter of Lester,* 172 App. Div. 509; *Matter of Binghamton Trust Co.,* 87 id. 26; *Matter of Harbeck,* 81 Hun, 26; affd., 145 N. Y. 648; *Matter of O'Brien,* 5 Misc. 136; *Matter of Quinn,* 16 id. 651.)

3. The clerical services performed by the attorney objected to as charged for on basis of legal services.

The charges made by the attorney for services which were strictly clerical cannot be allowed for at the rates charged for strictly legal services. (*Tinney* v. *Pierrepont,* 18 App. Div. 627.)

4. The services performed by the attorney, objected to as services that were unnecessary.

As the decedent left ample personalty to pay debts and expenses, and there was no contest of the will, the real estate which decedent left passed directly to his residuary devisee, and although the testimony showed that a consultation in relation to the appointment of a temporary administrator was made for the protection of the real estate, any consultation with the surrogate in relation to the appointment of a temporary administrator was unnecessary, as was the proceeding for the appointment of a transfer tax appraiser which was afterwards abandoned and an order entered vacating the appointment. A proceeding was afterwards begun fixing the amount of the transfer tax upon motion. Undoubtedly both were matters for the attorney's judgment and he believed that he was acting for the best interest of the estate in both instances, and the charges therefor are allowed.

5. The services performed by the attorney on the accounting, objected to for the reason that no counsel fee can be allowed in an accounting proceeding.

Undoubtedly such is the fact, and the only question is whether section 279-a of the Surrogate's Court Act, which was enacted after the decision in *Matter of Eddy* (207 App. Div. 162), holding that no counsel fee could be allowed on an accounting, and that sections 278 and 279 of said Surrogate's Court Act only applied, changes the law as stated in the said decision. I do not consider that the enactment of said section changes the law that no counsel fee can be allowed on an ordinary accounting, but in a proceeding where it would be necessary to have examinations made to determine who were to be made parties, as in the case of a distribution of a trust fund, where the trust had run for many years and the remaindermen were unknown, or where unusual circumstances required *necessary and proper* legal services in order that an accounting proceeding might be conducted then, and only in such case can a counsel fee be allowed. In this proceeding no such situation arose

and the amount paid the attorney by the executor for such services are disallowed and costs and allowance as fixed by sections 278 and 279 of the Surrogate's Court Act as hereinafter stated will be allowed in place thereof.

Excluding the services for which the attorney's charges cannot be allowed as a matter of law, the executor will be allowed for his attorney's services in the proceeding for the probate of the will, transfer tax proceeding, proceeding to advertise for claims against the estate and general legal services in relation thereto. The account shows that the estate consisted of two savings accounts, two accounts in building associations, $300 in two small death benefits, a mortgage for $2,700 specifically bequeathed, and decedent's personal effects, totaling in value $13,073.69, and real estate appraised at $10,950, which passed to the residuary devisee upon the probate of the will. The will was not contested and all of the services performed by the attorney were simple in character and his testimony on the hearing was that there was nothing unusual about the estate. There was one disputed claim which was compromised at twenty-five dollars less than the amount claimed.

Six experts testified as to the value of the attorney's services, three for the executor, who stated that such services were worth from $2,500 to $3,500, and three for the contestant, who valued such services at not more than $1,250 to $1,500, but all such testimony was based upon all of the services performed and charged for, which included services in relation to the burial of decedent, and unnecessary executorial and clerical services and services on accounting. As the time spent by the attorney on strictly legal services was much less than the time for which services were charged, and as the testimony of experts is in no sense controlling upon the court and is only advisory (*Matter of Ellis*, 176 App. Div. 425; *Tubiola* v. *Baker*, 225 id. 420), and as legal services are matters particularly within the knowledge of the courts (*Bramble* v. *Hunt*, 68 Hun, 204), and as the surrogate is familiar with the services performed and the necessity for them (*Matter of Spooner*, 86 Hun, 9), and taking into consideration the time spent by the attorney, on strictly legal services, the nature of the legal services, the services rendered, the professional standing of the attorney, the value of the estate and the results obtained, I find that the reasonable value of the legal services performed by the attorney for the executor to be the sum of $1,000.

The concluding statement in the decision of the court in *Matter of Hallock* (214 App. Div. 323), where a charge of $2,000 was reduced to $1,000, by leaving out the statement in relation to the New Jersey transfer tax proceeding and the reference to the attorney

being the executor could, as the services performed were so much alike, be adopted as a part of the opinion in this proceeding, viz.: " But such compensation should be made commensurate with the magnitude of the estate, the difficulty of the work performed, and the result obtained. Here we have a comparatively small estate. There was no litigation or serious complication of any kind, nor any unusual or extraordinary feature unless it was the New Jersey transfer tax proceeding and the matters of the small transactions involving $122.50 heretofore discussed. It is rarely that an administration of an estate is more simple in its details than was this. The work was almost entirely of a routine nature and the legal services were not onerous nor did they add much to the responsibility of the respondent in addition to what he agreed to assume when he accepted the office of executor."

The objections to the account that the executor had not accounted for a diamond ring and a diamond and sapphire pin, claimed to have been owned by the decedent, are dismissed, as no proof was offered that the executor, or his attorney, ever received them, and the testimony of the executor that they had never come into his hands is to be believed. The small scarf pin shown on the hearing, however, and any other personal effects which belonged to the decedent, and are not shown in the account, are, pursuant to the request of the residuary legatee, directed to be delivered to her. The executor is surcharged with the sum of $1,500, the amount overpaid by him to his attorney for alleged legal services, and as the executor acted in good faith in paying the charges of his attorney, costs of this accounting, payable out of the estate, are awarded to him, to be applied on account of the surcharge hereinbefore made, and costs, likewise payable out of the estate, are awarded to the attorneys for the contestant.