In the Matter of the Estate of HARRY SCHER, Deceased.

Surrogate's Court, Westchester County, May 22, 1933.

*Gettinger & Gettinger* [*Michael Halperin* of counsel], for the accounting executor.

*Richard H. Levet,* for John J. Ackerman, as committee of the incompetent executrix.

SLATER, S.  In this proceeding a final decree is sought as well as the fixation of the fees of the attorney for the executor, Scott. Objections have been filed to the account of proceedings by the

committee of the incompetent widow, the sole legatee and devisee under said will.

The will of the decedent was filed for probate January 29, 1932, and the petition for probate by Millie Scher, the widow, was filed February 15, 1932, with citation returnable March 4, 1932. The decedent left the widow and six children him surviving. The will gave to the widow, Millie Scher, the whole estate; made no provision for the children, because of the decedent's " abounding faith and confidence in my wife, Millie Scher, who, I am certain, · will look after the best interests of our children, provide for, educate and maintain them, and give them such financial assistance, as they, in her judgment, may need and be deserving of during her lifetime, and that she will equitably provide for them in case of her death." The will was dated March 14, 1922. The decedent died January 16, 1932. A lapse of ten years existed between the will-making and the death. The will nominated the wife, Millie Scher, and Max Scott to be executors.

The petition and papers upon probate were presented by Abeles & Green, attorneys for the petitioner, the widow, Millie Scher, one of the executors. The will was admitted to probate March 4, 1932. Upon the return day of the citation, the executor, Scott, attended in court in person, filed his appearance by attorney, and demanded that he be permitted to have as his own attorney his son-in-law, Milton Gettinger, a member of the firm of Gettinger & Gettinger. The difficulties affecting this estate started at this time. The surrogate in open court stated that only one attorney's bill would be allowed and such bill would have to be divided between the attorneys for the two executors.

The decedent had been in the fur business in New York city, owning shares of stock in Harry Scher & Co., Inc., engaged in such business. The executor, Scott, in years gone by had also been in the fur business.

Soon after the probate of the will the sole legatee, the widow of decedent, became incompetent to perform her duties as such executrix. She was, on March 18, 1932, committed by the County Court of Westchester county to Bloomingdale Asylum. On July 1, 1932, she was adjudged incompetent by order of the Supreme Court, and John J. Ackerman was appointed committee of her person and property. She is now in the Bloomingdale Asylum. A proceeding was brought in this court seeking her removal as executrix, which was effected by order of this court dated October 14, 1932.

The transfer tax proceedings show the gross estate to be about $75,000, consisting of equities in real estate and stocks and bonds.

After the payment of debts, funeral expenses and administration expenses the net estate is about $55,000.

There is nothing unusual about this estate. It should have taken its usual course and the final settlement of the estate made in October, 1932.

The decedent had a home in Mount Vernon, subject to mortgage. This real estate was sold by the executors and difficulty arose with regard to making title. A proceeding was brought in the Supreme Court to sell the interest of the incompetent sole devisee, and a deed was taken from her committee, as well as one from Scott, the surviving executor of the decedent.

The order of sale with regard to the Mount Vernon property was made by Mr. Justice TAYLOR, dated November 12, 1932. It contains the following direction: " Ordered, that the said Max Scott, as Executor of the Estate of Harry Scher, deceased, be and hereby is authorized and empowered to use and dispose of the said balance of the said cash proceeds and the remainder of the interest of said executor in and to the said purchase money mortgage, for the payment of debts and funeral and administration expenses of the Estate of Harry Scher, deceased, and for the distribution to the beneficiary under the Will of said Harry Scher, *all in such manner as said executor may be directed by the Surrogate of Westchester County.*"

This part of the order of the Supreme Court was violated by the executor, Scott, when he paid his own attorney the sum of $2,500 in January, 1933, *without* direction by the surrogate of Westchester county.

The first objection filed by the committee of the widow to Scott's account of proceedings relates to the claim of his attorneys for legal services in the sum of $6,500. In fixing a fee for an attorney's services, several elements must be considered: (1) Good faith of the litigation; (2) determination of the questions raised — whether such determination is in the interest of the estate; (3) is the bill for the service rendered a reasonable one? (4) consideration of the time spent, the nature of the services, the amount of the estate, the professional standing of the counsel; (5) the result, meaning the value, of the attorney's services. (*Matter of Potts,* 213 App. Div. 59; affd., 241 N. Y. 593; *Matter of Lester,* 172 App. Div. 509, 519, 520; *Matter of Brodbeck,* 123 Misc. 743; *Randall* v. *Packard,* 142 N. Y. 47, 55.) The burden of proof is on the claimant to establish the reasonableness of the claim and the value of the services rendered.

Some of the services performed by counsel were executorial in character. (*Matter of Hallock,* 214 App. Div. 323.) No allowance

can be made to the executor for the amount paid to his attorney for such services. (*Matter of Owen*, 144 Misc. 688, 693, and cases cited.) Charges made by the attorney for services which were clerical cannot be allowed for at the rate charged for legal services. (*Tinney* v. *Pierrepont*, 18 App. Div. 627.)

Evidence by experts was taken as to the value of the attorneys' services. Such evidence is only advisory. (*Matter of Ellis*, 176 App. Div. 425; *Tubiola* v. *Baker*, 225 id. 420.)

When an attorney's bill is paid in advance, the executor assumes the risk of a surcharge if the disbursement is improper or excessive. (*Matter of Gilman*, 251 N. Y. 265.) The rule is settled that the executor cannot contract for services to be rendered and, if so, they become his personal contracts and do not bind the estate. (*Parker* v. *Day*, 155 N. Y. 383, 387; *Matter of O'Brien*, 145 id. 379, 382, 383, 385.)

Neither the widow nor the family ever wanted Scott to qualify as executor, but he was determined to do so against their will and within his right.

In order to get a picture of the affairs of the estate, I will state the character of the legal services rendered by all attorneys for the estate:

1. The will was probated upon the petition of Millie Scher, the widow, executrix, by Abeles & Green, attorneys for her, and the account shows that they have been paid $400 for such services;

2. The evidence disclosed that there was a certain amount of indefinite services of a general nature rendered by the attorneys for Scott, the executor, as well as by attorneys for the widow;

3. The committee of the incompetent executrix brought a proceeding on July 1, 1932, to remove Max Scott, one of the executors;

4. A proceeding was brought by Scott to remove Millie Scher, the incompetent executrix;

5. On July 2, 1932, a discovery proceeding was brought by Scott, the executor, with appeals to the Appellate Division;

6. As late as April 7, 1933, an order was signed directing the committee of the incompetent executrix to show cause why assets in his hands should not be turned over to Scott;

7. The transfer tax proceeding, with the report of the appraiser, was filed January 6, 1933. This proceeding and the Federal tax proceeding were taken entirely by John J. Ackerman as committee of Millie Scher;

8. The intermediate account of Scott directed by this court, the compulsory proceedings to compel Scott to account, and the final account of proceedings filed by Scott;

9. The final account of proceedings by John J. Ackerman as committee of the incompetent executrix.

As to the general services rendered by Scott's attorneys:

It was testified to before me that a Mr. Warner, of the office of Gettinger & Gettinger, had stated on August 24, 1932, in the proceedings in the Supreme Court brought to sell the Mount Vernon real estate, that no attorneys' charge was to be made by Gettinger & Gettinger before that date. It was not denied by Mr. Warner. Gettinger & Gettinger denied it. Before this date some general services had been rendered for Scott. Letters had been written; meetings had been held and were attended by the children of the decedent; the sale of the Mount Vernon house was contracted for; consideration had been given to claims against the estate and in favor of the estate.

As to the proceedings to remove the two executors:

On July 1, 1932, the committee of the incompetent widow brought on a proceeding to remove Scott, the executor.

Scott's attorney briefed the law on this subject and also filed answering affidavits, and became qualified to defend him. *This proceeding* was never heard nor decided by this court, due to the fact that time to render a final accounting had arrived.

On July 1, 1932, the attorney for Max Scott petitioned for the revocation of letters testamentary to Millie Scher, executrix, because of her declared incompetency. It was entirely a formal uncontested matter granted as a matter of course.

In September, 1932, the court directed Scott to file an account of proceedings. Scott filed an account but stated it was not done pursuant to the direction of the surrogate, and the court thereupon, on October 3, 1932, removed him as executor. A hearing for a stay upon the removal was argued in the Appellate Division October 7, 1932.

As to the discovery proceedings:

On July 2, 1932, Scott, executor, started a discovery proceeding. After hearing, it was dismissed by the court. From the order of removal of Max Scott, and from the order dismissing the discovery proceedings, and from the order directing Scott to account, Scott, executor, appealed to the Appellate Division. A hearing was had in all three appeals upon one printed case on appeal, upon stipulation consolidating the appeals. The Appellate Division, by order dated December 10, 1932, unanimously affirmed the order directing the account to be filed; reversed the order removing Max Scott, and the order denying motion for leave to examine John A. Scher and Mark D. Scher, individually and as officers or employees of Harry Scher & Co., Inc.

A further examination was had of John and Mark Scher. The court refused to permit an examination of the Harry Scher Co., Inc., on the ground that the court lacked jurisdiction to inquire into the affairs of the corporation, as no person interested in the estate as owner, executor or trustee was a director or officer of the company. (*Farmers' Loan & Trust Co.* v. *Pierson,* 130 Misc. 110.) Scott appealed and, by order dated March 10, 1933 (238 App. Div. 848), the Appellate Division decided and said that with respect to the examination of the books such examination is limited to the items aggregating $100,000, to which the executor claims there is a discrepancy, and directed that the examination proceed before the surrogate.

The hearing proceeded during the month of April, 1933, in two sittings. An examination was had of the books and of the two financial statements. The court has dismissed the proceeding. It found that no part of the assets had been taken, nor had the value of the shares of stock been lessened.

The discovery proceeding was a fiasco. From Scott's standpoint, it was expensive. It was without result to the estate. The testimony shows it was conceived in spite and executed in hearings and appeals to " get square " with decedent's sons who were not beneficiaries of this estate. The sons were officers of the company and conducted the business of the company. The proceeding was needless. The three matters of property sought for were:

(1) The insurance policies which were not payable to the estate and Scott had been informed of it before the discovery proceeding started;

(2) The $2,000 taken by check from the decedent's bank account by the son subsequent to the father's death for the purpose of paying estate bills was accomplished after the father's death with the knowledge and the connivance of Scott himself;

(3) The internal affairs in the Harry Scher Company were no affair of the executor. The estate simply held stock which passed to the widow as sole legatee. The executor, Scott, held a copy of a confidential bank statement and a later business statement furnished by a certified public accountant of the company, which showed no discrepancy in the assets of said company.

The undenied testimony before me on this accounting proceeding disclosed the haggling over the bills of Scott's attorney with one or more of decedent's children, with a statement on the part of the attorney that he would stop litigating and would end the discovery proceedings if a payment of $3,500 was made for his legal services. A reference to the testimony by the sons will disclose this and more. A bill for $7,500 had been rendered. Scott says he had it reduced

to $6,500, and then paid $2,500 on account. He now asks to be permitted to pay the balance of $4,000.

To sum up the legal services rendered for Scott, we find the following:

1. Certain general services that every lawyer has to perform in connection with an estate. It may be noted, however, that Scott's attorneys had nothing to do with the preparation of the petition and the probating of the will, or the order to publish for claims, or the transfer tax proceeding, except possibly looking over the form of the petition for probate;

2. The proceeding to remove Mrs. Scher, the widow, sole legatee and devisee, because of her incompetency;

3. Dealing with several claims against the estate and in favor of the estate;

4. Briefing the law to defend the removal of Scott in the proceeding begun by the committee of the incompetent executrix. This proceeding was never consummated, never heard, nor decided. When Scott was removed, it was done on the court's own motion in the intermediate accounting proceeding because of his refusal to obey the order of the court;

5. The discovery proceeding, which was unnecessary and unproductive of any result to the estate;

6. The three appeals to the Appellate Division consolidated in one, attendance there, the stay sought and received, with the result that Scott was not removed and the court was directed to receive further testimony in the discovery proceeding;

7. The intermediate account which Scott, the executor, filed with the statement questioning the jurisdiction of the court and that it was not filed because of the court's order to do so.

On February 8, 1933, John J. Ackerman, as committee, started a compulsory accounting proceeding requiring Scott to account, alleging his failure to account and his neglect to perform his duties to fix the State and Federal tax returns. Citation issued and. was served. Scott opposed. The court directed him to account. His account was filed March 3, 1933. An order of consolidation was made March 7, 1933.

8. The present account of proceedings filed under compulsion and pursuant to proceedings commenced by the committee of the sole legatee. It accounts for $54,741.36, with a net balance of $17,480.33, consisting of a mortgage on the Mount Vernon home of $16,650.

The administration of the estate was simple in its details. Its difficult parts were manufactured by counsel for the executor. The work attendant upon the estate, except as it had cast upon it,

was routine and not onerous. All constructive legal services were performed by the counsel for the widow.

I find the reasonable value of the legal services performed by the attorney for the executor, Scott, to be the sum of $1,500.

The executor, Scott, in willful and contemptuous violation of the order of Mr. Justice TAYLOR of the Supreme Court, in January, 1933, paid from the funds resulting from the sale of the home to his counsel, the sum of $2,500 without direction or order by this court. Instead of asking the surrogate to pay the claimant Fillmore the amount of his claim, later paid by the committee, Scott willfully violated Justice TAYLOR's *order*, and paid his attorney son-in-law instead. The executor is surcharged with the sum of $1,000, the amount overpaid by him to his attorney for alleged legal services. This amount he is directed to pay to John J. Ackerman, committee of the person and property of Millie Scher, together with any other estate assets in his possession.

The committee of the incompetent executrix beneficiary accounts for the value of assets in the sum of $43,537.41. He asks the court to fix the fee for legal services at $3,000, later reducing it to a request for $1,500. This was objected to by Scott, the other executor.

In the accounting by the committee the court appointed David H. Moses as special guardian, and in his report, filed March 2, 1933, he states that the legal services performed by Mr. Levet, as attorney for Ackerman, the committee, " have been both necessary and beneficial for the estate of said Harry Scher and that all legal matters have been handled skillfully and diligently by the said attorney." He further says that the attorneys for Max Scott " have not consulted with me as Special Guardian or submitted the accounts to me for approval nor have I been served with a notice of filing of the same by them." He further says: " I am of the opinion that the services performed by Gettinger & Gettinger [being the attorneys for Scott, executor] were detrimental rather than to the benefit of the estate and were obstructionary in nature and tended to cause the estate expense rather than to preserve or realize the assets."

In the account of proceeding by the committee the court has fixed the fee for legal services for the attorney for the committee of said widow executrix and sole legatee as follows: For the two transfer tax proceedings in this estate, the State and Federal tax; proceeding to compel Scott to render his account; for general services rendered; for the final account of proceedings of the executrix and decree thereon; preparation of release of claims; procuring order of Supreme Court to withdraw $2,000 to pay Fillmore claim, $1,100.

Abeles & Green were paid $400 for probating the will, which, added to the $1,500 allowed to attorneys for Scott, executor, and $1,100 allowed to attorneys for Millie Scher, executrix, makes a total charge for legal services against this estate of $3,000, or five and one-half per cent upon the net estate and about four per cent upon the gross estate. This is more than is usually allowed in estates of this size.

The litigation brought on by Scott, executor, has been vexatious, unnecessary and without regard to the decedent's beneficiary. The appeals and motions by his attorneys have been harmful to the estate. They have obstructed and delayed the proper administration of the estate. Such litigation was unnecessary and frivolous and meant to harm the estate by excessive attorneys' bills. Whatever constructive legal services there have been seeking to settle this estate have been conducted by other attorneys. For instance, the probate of the will by Abeles & Green; the transfer tax proceedings by the attorney for the widow executrix, as well as the final accounting by her. Scott's whole attitude from the start to the finish has been contemptuous of courts, and neglectful of his trust duties as executor.

The question of an allowance of commissions is in the discretion of the surrogate. (*Matter of Hutkoff*, 124 Misc. 703.) I have restrained my impulse to deny commissions to Scott, much as his conduct might have merited such punishment. Actions by the fiduciary causing unnecessary expenses to the estate, failing to give attention to the affairs of the estate, have been considered a sufficient sole cause for disallowance of commissions, even though the estate suffered no loss by reason thereof. (*Stevens* v. *Melcher*, 152 N. Y. 551, 583; *Matter of Clift*, 135 Misc. 417, 418; *Matter of Taft*, 145 id. 435, 438, 439.)

The other objections noted, filed by the widow, executrix, are dismissed.

Scott, executor, is directed to indorse and assign any and all certificates of stock or other securities to John J. Ackerman, as committee of the property of Millie Scher, an incompetent.

The commissions will be figured by the accounting department of the Surrogate's Court and divided equally between the two executors.

As the compulsory proceeding to account has been consolidated with the account of proceedings now pending, either party may submit the decree pursuant to this decision upon notice to the other.