In the Matter of the Estate of GEORGE L. ROBERTS, Deceased. JESSIE E. R. GALE, Appellant; JOSEPH G. POLLARD, as County Treasurer, as Administrator of the Estate of GEORGE L. ROBERTS, Deceased, Respondent.

Fourth Department, October 31, 1963.

*Oot, Greene, Setright & Moore (Marc G. Terziev* of counsel), for appellant.

*Shamon & O'Connor* for respondent.

*Muserlian & Furtch (William H. Welch* of counsel), for Great American Indemnity Co.

*Gleason, Doyle & Gleason* for Flora F. Knox and others.

BASTOW, J. The appellant is the widow of one George L. Roberts, who died in Cayuga County on January 6, 1952. This proceeding was brought in Surrogate's Court of that county to

vacate (1) a decree of January 9, 1952 granting letters of administration to respondent, and (2) a decree of September 8, 1953 settling the accounts of respondent as administrator. Upon this appeal the widow has abandoned her request to vacate the decree granting letters of administration, but seeks to reverse the determination of the Surrogate denying her application to vacate the decree of judicial settlement. An intelligent consideration of that issue requires exploration of the earlier proceedings in the estate.

The decedent lived alone in a camp on the shore of Cayuga Lake. Three days after his death, respondent as County Treasurer (Surrogate's Ct. Act, § 118) was appointed administrator upon a petition alleging that there were no known relatives. Shortly thereafter respondent's attorney learned from the State Police that there was a widow — one Jessie Roberts (the appellant) residing in the Town of Salina, Onondaga County. This information was obtained from a member of that organization who testified herein that the extent of his activity to locate the widow was to send on the teletype a general or " thirteen state " alarm containing a request to police departments to furnish information as to the " whereabouts of any relative or person ". No replies were received to the message. Upon cross-examination the trooper frankly admitted that if he had been looking for the widow he would have gone to the Town of Salina where he would have examined the telephone and city directories, tax rolls and utility records.

Subsequently a proceeding to sell the Cayuga Lake realty was instituted. In the petition the administrator swore upon " hearsay information " that at one time decedent had been married to one Jessie Roberts of the Town of Salina, County of Onondaga. " From the same source " (not revealed) information had been received that the parties had been divorced. Attached thereto was an affidavit from the State trooper setting forth the sending of the teletype message requesting information as to the whereabouts of appellant and the conclusory statement " that no such person (as the widow) could be found ". The citation in this proceeding was directed only to the widow in the Town of Salina and was served by publication pursuant to an order which dispensed with mailing upon a finding that the administrator with reasonable diligence could not ascertain a place where the next of kin would probably receive matter transmitted through the post office.

After the realty was sold the administrator filed his final account. This contains a repetition of the recitals in the earlier proceeding that from " hearsay information " decedent had been

married to one Jessie Roberts, who resided in the Town of Salina and " from the same source " (not revealed) that the parties had been divorced. Included therein is a new ipse. dixit that the wife " has clearly abandoned " the intestate. The citation similarly was addressed to the widow in the Town of Salina. However, in the petition to account and in the administrator's affidavit seeking publication of the citation, respondent swears that the whereabouts of the widow are unknown. The order directing publication dispensed with mailing upon a finding that the whereabouts of the heirs and next of kin were unknown.

Actually, neither respondent nor his attorney made any effort to locate the appellant. Neither went to the Town of Salina or caused any investigation to be made. The attorney testified that he relied on the report of the State Police although he never obtained a copy of the report. The rumors about a divorce or abandonment were obtained from " some of the neighbors " but the attorney could not recall the names of the persons.

The final account listed the distributees as the widow and nine named cousins. Inasmuch, as we shall subsequently see, during all this time the widow was living in the Town of Salina (some 35 miles from the Cayuga County seat), it is interesting to relate the manner in which these cousins were located. The administrator learned from a birth certificate of the decedent that the latter had been born in Hinesburg, Vermont. Respondent and his attorney went to Vermont and with the assistance of a local attorney located some cousins. Subsequently in their search for distributees they visited two communities in Massachusetts and one in Maine. The decree of judicial settlement directed payment of the residue of the estate to the nine cousins.

The proof in this proceeding established that appellant and the intestate were married in 1931. Appellant had been previously married and had two adult children of the previous marriage. She then owned a home in Syracuse where the parties lived until 1934 when the husband " picked up his things and left " and never returned. The fact that he was residing in the camp at Cayuga Lake was known to the wife as she had possession of a deed dated in 1927 conveying the camp property to the husband. Moreover, appellant's son had visited his stepfather from time to time at the Cayuga Lake camp. In 1947 the wife purchased a home in the Village of Liverpool in the Town of Salina where she resided until the time of trial. Her name and address were listed in the Syracuse telephone and city directories. The realty was listed in her name on town and village tax rolls. Through the years she was employed at various places,

including, for more than 10 years, the New York State School and Syracuse Psychopathic Hospital.

The proof is overwhelming that appellant did not discover that her husband was dead until the Fall of 1958 — some six years after his death. On a casual drive with a friend in the vicinity of Cayuga Lake appellant stated that she would show the friend the camp where her husband lived. They discovered that the building had been demolished and a new residence erected on the site. Inquiry disclosed that her husband had been long dead. In June, 1959 she married her present husband.

One of the recognized methods of obtaining jurisdiction of a party in Surrogate's Court is by service of process (Surrogate's Ct. Act, § 41). Subdivision 3 of section 56 of the same act provides in part that service by publication of a citation may be directed '' Where it is to be served upon a party * * * whose name, or residence, cannot be ascertained.'' Furthermore, the affidavit seeking such an order must recite facts which show '' that the petitioner has used due diligence to ascertain the names and post-office addresses of the parties whose names or post-office addresses are unknown.'' (§ 57.) It has been written that '' It would be difficult to overemphasize the importance of adequate compliance with this requirement. It has been held that where an affidavit on such an application failed to show due diligence, but despite this defect, an order for service was made by the Surrogate, the publication failed to give the Surrogate jurisdiction over the parties thus served, ' service made thereunder was null and void ' and the resulting decree must be vacated.'' (1 Butler, N. Y. Surrogate Law and Practice, § 416; *Matter of Hone,* 250 App. Div. 635; *Clarkson* v. *Butler,* 173 App. Div. 143; *Matter of Owen,* 144 Misc. 688; *Matter of Clarke,* 144 Misc. 705.)

The administrator failed to use due diligence. Both the name and correct address of the widow were stated repeatedly in papers filed in Surrogate's Court. Even a perfunctory search would doubtless have located the appellant. Respondent was content to rely on a single teletype message sent by the State Police. There is no proof that the receivers thereof in 13 States had any reason or responsibility to search for the widow. The standard of diligence required of the administrator is best demonstrated by his thorough search in three States for the cousins who have been paid the residue of the estate. Lastly, service by mail of the citation undoubtedly would have been received by appellant, but respondent perversely obtained an order dispensing therewith, that was granted upon insufficient and unauthor-

ized grounds. Service of the citation upon appellant in the proceeding to judicially settle the account of the administrator was a nullity and the resulting decree must be vacated.

We find no merit to respondent's contention that appellant was guilty of laches in commencing this proceeding. Such an application will not be denied for laches, since the decree is a nullity and cannot be made regular by a party's delay in moving to vacate it. (7 Carmody-Wait, N. Y. Practice, p. 402; *Wheelock* v. *Wheelock*, 3 A D 2d 25, affd. 4 N Y 2d 706; *Citarella* v. *Malone*, 14 Misc 2d 1055.)

The petition herein asked judgment against respondent for a stated sum which was the total amount of his receipts as administrator. Such relief may not be granted as some of the disbursements may be proper. The proceeding must be remanded for the purpose of taking proof upon this subject. To avoid further litigation we enumerate certain items that should be disallowed or respondent surcharged therefor. First, commissions should be denied to respondent. It is not necessary to prove a willful act on the part of the representative. Negligence is sufficient to bring about that result. (4 Warren's Heaton, Surrogates' Courts, § 421, par. 2, subpar. [h]; see, also, *Matter of Gall*, 107 App. Div. 310.) The administrator should be surcharged with the following items set forth in Schedule B of the account: Expenses for investigation of heirs $327.40; four items for publishing citations totaling $107.28, and attorney's fees in the sum of $795. In addition, of course, there should be a surcharge for the total amount paid to the so-called distributees.

The decree of judicial settlement should be vacated and the matter remanded to Cayuga County Surrogate's Court for further proceedings in accordance with this opinion.

WILLIAMS, P. J., HENRY and NOONAN, JJ., concur.

Decree unanimously vacated and matter remitted to Cayuga County Surrogate's Court for further proceedings in accordance with the opinion, with costs to appellant against the respondent personally.